UNITED STATES v. LEE.

(Circuit Court, E. D. New York.  February 28, 1901.)

WITNESSES—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT.
Where an accused admitted to bail could not be found, and on investigation by the grand jury it appeared that his counsel was not retained by the accused, but by some person acting for accused, or in his interest, the counsel might be compelled to disclose the name and residence or usual place of abode of such person, but not the interest such person had in the matter.

George H. Pettit, for the United States.
Jerry A. Wernberg, for Jacob Neu.

THOMAS, District Judge.  On November 7, 1900, one Louis Lee was arraigned before this court upon an indictment theretofore found, charging him with larceny committed in the navy yard, and upon a plea of not guilty the defendant was admitted to bail.  On the 12th day of November the United States attorney moved the trial of the indictment, after due notice to the defendant's bondsman and counsel.  Thereupon his counsel, Jacob Neu, stated that he was not and could not be prepared to defend the case at said term of court, and a continuance to the succeeding term was for that reason granted.  On the 2d day of January, 1901, the government again moved the cause for trial, on due notice to the defendant's bondsman and counsel.  Neither the defendant nor Mr. Neu, his counsel, appeared, but Mr. Alfred J. Gilchrist, Mr. Neu's partner, appeared and stated that he did not know where the defendant was or where he could be found; and since that time the proper officer has been unable to execute the bench warrant which was issued by the court for the apprehension of the defendant.  It appears that no information of the whereabouts of the defendant is obtainable by the marshal or his assistants, and the court is informed that the bond of the defendant has been paid.  It thus appears that the defendant has fled from justice, and that the slightest trace of his going is not discoverable.  The United States attorney is investigating by means of the grand jury this sudden and mysterious departure, and is proceeding upon the theory that it was not effected without the aid of others.  Who such persons are, who were corruptly privy to this flight, is the information which the grand jury demands.  In aid of this investigation Mr. Neu has been subpœnaed, and has answered several questions relating to events, but has declined to answer questions tending to show what man was associated with Lee, in reference to his trial in this court, except that it appears from his evidence that he was not retained by Lee himself for the latter's defense, but that a third person arranged the retainer and paid some portion of the counsel fee.  Mr. Neu urges that this person in the matter of such meeting became his client, and that whatever communications such person made to him are privileged.  It may be the position of the United States attorney that a person so solicitous for the defense of Lee, and so intimately associated with his interest as to undertake the retainer

and obtaining of counsel, may have such knowledge of the subsequent movements of Lee as would justify the grand jury either in subpœnaing such person, or, upon a proper state of facts, accusing him by indictment with participation in such departure; or it may be the position of the district attorney that the defendant's counsel gained knowledge from the man tending to show that it was the latter's intention to assist the defendant to escape from the jurisdiction of this court, or to conceal himself from the officers thereof. The questions asked by the district attorney which the witness declined to answer are as follows:

"By Mr. Pettit. I ask you to state the name of the man who retained you to defend Louis Lee. A. I respectfully decline to answer that question, on the ground that the man who retained me to defend Louis Lee was my client, and that his name and any communication made by him to me are confidential communications between attorney and client, and were privileged, and I claim that privilege. Q. Was that man Lee himself? A. It was not."

After stating his relation to the bondsman, that he did not know that Lee was going to run away, and that neither the bondsman nor Lee ever paid him any money, the witness declined to answer the following question:

"Q. Who did pay you money in relation to this case? A. I decline to state who paid me any money in relation to this case, for the reasons before stated, and claim that it is my privilege, and also that it is confidential as between attorney and client, and that I am precluded from so doing."

The witness then stated that he did not know where the defendant was; that he had made no effort to find him; that the bondsman told him that he could not be found; that he knew of no scheme or arrangement to have Lee disappear or run away; that he considered his connection with the case ended, so far as Lee was concerned; and he declined to state whether the client who retained him lived in Manhattan or Brooklyn, but added that the only connection he still had with the case was in relation to the client who retained him for the defendant, and so far as such client's interests are concerned. Thereupon the witness was asked this specific question:

"Q. What interest has this client who retained you in Lee's case? A. I decline to answer, for the reasons above stated. Q. Did the party who retained you to defend Lee retain you to defend his own interests as well? A. I decline to answer, for the same reasons."

It is an attorney's right to guard the secrets of his client, where such secrets do not involve an actual or intended breach of the law on the part of the client, and hence complicity by the attorney therein, and the court should support him in such duty. The grand jury should not proceed a single step in the direction of trespassing upon this long-respected privilege growing out of the relation of an attorney and client. But this relation does not excuse an attorney from withholding from a proper tribunal evidence bearing upon an intention or arrangement on the part of the client to perform some illegal act in the future, nor the actual doing of such act. It does not appear thus far from the evidence submitted to the court that

the witness has information of this nature. It should be observed that the basis of the protection afforded to the communication of clients to attorneys is found in the law, and not in some convention or agreement made between the attorney and the client pursuant to which the communication is made. Attorneys and clients cannot broaden the scope of the privilege, although they may narrow it, even to the point of waiving it altogether, and therefore it is unimportant that the unknown client exacted from the attorney a promise that he would keep secret whatever communications should be made. That might be a reason for the witness refusing to answer without a compulsory order of the court, but it would not and could not of itself, without the aid of the law, protect a communication. The law would protect the witness from answering questions now brought to the attention of the court, save those relating to the name of the person and his residence, upon the ground that they necessarily involve communications from a client to an attorney. For instance, a question relating to the interest which the client had in the prosecution of Lee might involve such communication, and is objectionable. If the client did have an interest, and stated it to his counsel, the latter is called upon to reveal it. This should not be. But it is thought that a counsel may not state that he gained the information called for from a client, and then leave that client mysterious, unknown, and undefined. The court has a right to know that the client whose secret is treasured is actual flesh and blood, and demand his identification, for the purpose, at least, of testing the statement which has been made by the attorney who places before him the shield of this privilege. The declination of the answer because a man imparted the desired information who stood in the relation of a client justifies the testing of questions relating to the client's actual identity and existence. Respecting the residence there might be more question. If it may be urged that the court should not compel an attorney to give up information received from his client which should betray the client to the authorities, thus putting him in the position of an informer against his client, yet if the attorney knew the usual, general residence of his client, where he, in the usual course of business relations, may be found, and where he might be expected to be, provided he was not concealing himself from apprehension, but was living as should an unoffending citizen, then, at least, the information should be given. In such a matter the witness should do what a good citizen would be called upon to do, taking into consideration a fair and full enforcement of the law which commands the due preservation of his client's interests. These views accord with previous holdings. Brown v. Payson, 6 N. H. 443; Alden v. Goddard, 73 Me. 345; Harriman v. Jones, 58 N. H. 328. Therefore the court thinks that the witness should answer the questions as to name and residence.

It is further suggested that the grand jury should be conservative in the matter of developing from an attorney information which he has derived from his client, and not only should the action be conservative in obtaining that information, but the grand jury should most carefully use that information, lest the court should appear

to be unjust in compelling an attorney to reveal the identity and residence of his client, with the result of allowing the grand jury to question such witness respecting the very matters for which he had employed and communicated to his attorney. Therefore, should the evidence of the attorney put the grand jury on the track of the client, such client should, in fairness, be examined with reference to all matters tending to show co-operation in the escape of the defendant, Lee; but use should not be made of the opportunity to compel such witness to answer questions relating to his interest, if any, in the offense for which Lee was indicted. It is true that his interest in the offense might furnish a motive for facilitating Lee's escape, but, if he were compelled to reveal that interest, he would be placed in the position of giving evidence against himself in a criminal proceeding, and that may not be allowed.