## MAUCH et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7252.

Circuit Court of Appeals, Third Circuit.

June 29, 1940.

Everett Kent, of Bangor, Pa., and Milton J. Goodman, of Bethlehem, Pa., for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Howard D. Pack, Sp. Assts. to Atty. Gen., for respondent.

Before BIGGS, CLARK, and JONES, Circuit Judges.

CLARK, Circuit Judge.

The petitioner-appellant[1] is an officer of this court and at one time served as District Attorney of the County of Northampton in the state of Pennsylvania. He was accused of income tax fraud by way of indictment (October 18, 1933) and by way of jeopardy assessments under 26 U.S.C.A.Int.Rev.Code, § 293 (March 13, 1933). The first proceeding ended in a directed verdict of acquittal (February 13, 1935) and the second in a decision of the Board of Tax Appeals, March 10, 1937, imposing the 50% fraud penalty. The docket entries of the District Court trial and the record here indicate that the same witnesses testified at both the criminal and civil trials. Petitioner questions the latter decision on two grounds. He advances, first, the notion that the Board should disregard a controlling and, incidentally, unanimous decision of the United States Supreme Court, and second, the thought that the confidential relationship of attorney and client may be used not only to protect a client in his right to seek counsel but also to shield the source of such advice.

The indictment of an eminent banker for income tax fraud will be remembered as one of the unpleasant aftermaths of the financial boom and collapse. He was acquitted by a jury but was subsequently sued for deficiencies and fraud penalties under the statute applicable here, Mitchell v. Commissioner of Internal Revenue, 2 Cir., 89 F.2d 873, 875. Both the defendant in that case and the petitioner herein made use of the plea of autrefois acquit. There is this difference in their positions. At the time of the rule in Mitchell's case, the law on the point was in some confusion, Hanby v. Commissioner of Internal Revenue, 4 Cir., 67 F.2d 125,[2] and he was, there-

---

[1] The wife is only concerned through her husband.

[2] See, also, Multiple Punishment Under the Double Jeopardy Rule, 31 Columbia Law Review 291, 292 (note); Constitutional Law—Former Jeopardy—As Bar to Civil Suit for Penalty Tax, 29 Michigan Law Review 930; Prior Conviction as a Bar to a Civil Suit to Collect a Penalty, 40 Yale Law Journal 1319 (note); Statutory Penalties—A Legal Hybrid, 51 Harvard Law Review 1092; Criminal Law—Former Jeopardy—Conviction for False Return of Income No Bar to Civil Action

fore, in the language of the United States Supreme Court rule (Rules of Practice and Procedure in Criminal Cases, rule 6, 28 U.S.C. § 723a, 28 U.S.C.A. § 723a), raising a "substantial question". So substantial, in fact, that he persuaded the Court of Appeals for his Circuit, Mitchell v. Commissioner of Internal Revenue, above cited. Now the law has that crystal clarity which goes with Mr. Justice Brandeis' touch, Helvering v. Mitchell, 303 U.S. 391, 395, 58 S.Ct. 630, 82 L.Ed. 917. It would be presumptuous, then, for us to even outline that confusion and its subsequent clarification. Suffice it to say, both depend upon a concept of jeopardy (or even res judicata) and the nature of the sanctions applied and intended. [3]

■ The petitioner's interpretation of a rule that does much to make his profession possible is equally unsound. The government shows that sums in the amount of $20,000, more or less, in each of the years 1929 and 1930 were deposited in the taxpayer's bank accounts and were not included in his income tax returns. He quite concedes this and states his position thus. Let it appear from his own mouth: "I will not state the source or the names of the persons from whom the funds were received. * * * They were clients. I will not state what clients. I will not state what the business relations between me and my clients were relative to those funds because I am not permitted as an attorney, as I understand the law with respect to my profession, to disclose confidential relationships between attorney and client." Mauch, Record p. 69. The text writers, and especially Professor Wigmore, explain the logic of this one of the privileged communications, 8 Wigmore on Evidence, 3d Ed., §§ 2290-2329. Like so many others, it is a rule of balance. Some truth is suppressed so that the general process of administering truth may be furthered. Our circumstance, the identities, rather than the sayings, of clients, is at the fulcrum. The record discloses no offer by the petitioner to obtain the permissible waiver from his anonymous clients. The absence of such offer may very well dispense with any necessity for a present determination of where the scale should come down.

If we assume, however, a refusal to waive, the authorities are almost unanimous in excluding bare identity from the scope of the privilege. They are collected in two thorough notes, Annotation—Evidence: privilege of attorney against revealing identity of client, L.R.A.1916C, 602; Annotation—Disclosure of name, identity, address, occupation, or business of client as violation of attorney-client privilege, 114 A.L.R. 1321; Devich v. Dick, 177 Mich. 173, 143 N.W. 56; 10 Ency. of Evidence 2288. Their reasoning is rather too general and not impressive, based as it is on some idea that the privilege does not apply to the creation of the relation, 28 R.C.L. § 153. If litigation is actually pending, a particular consideration governs. A party sued or suing is entitled to know who his opponent is, [4] 8 Wigmore on Evidence, 3d Ed., § 2313. Quite aside from this, it is clear that clients may desire freedom to as much as freedom of consultation.

The former freedom may well suffer from prying eyes and gossiping tongues. Jane Doe may object to her neighbors knowing that she has been in to consult Dodson & Fogg, attorneys and counsellors at law; Thornton, Attorneys and Counselors at Law, sec. 124. She will object much more to their knowing what she said to those eminent practitioners. We think the privilege must be shaped and the balance struck accordingly. The slight, though real, objection of one actual client must yield to any great interest of that body of prospective clients, the public. Such an interest appears most certainly where, as here, the claimed protection includes the attorney charged with defrauding that public. One almost may suggest such yielding as the penalty for an unfit selection of advisers. One surely can analogize in reverse

---

for Penalty, 47 Harvard Law Review 1438; Internal Revenue—Former Jeopardy—Acquittal in Criminal Prosecution as a Bar to Suit for Fraud Penalty, 22 Minnesota Law Review 1054; cf. United States v. One Dodge Sedan and One Nash Sedan, 3 Cir., 113 F.2d 552, filed June 29, 1940.

[3] Constitutional Law—Double Jeopardy—Acquittal in Prior Criminal Prosecution as Bar to Action for Penalties Based in Fraud, 37 Michigan Law Review 647; Res Judicata as a Plea in Bar in Criminal Prosecutions, 25 Virginia Law Review 839.

[4] This has been made a statutory requirement, Rev.Stat.Kans. 7-107; Klingberg v. Atchison, Topeka & S. W. R. Co., 137 Kan. 523, 21 P.2d 405.

from the judicial privilege in the law of libel. It is absolute because vital to the administration of justice. Here, that same administration requires disclosure.

That, at any rate, is the view and the direct holding of the Court of Appeals for the District of Columbia. There a lawyer charged with robbery was asked on cross-examination for the name of a client who had brought a witness against him into his office. He was compelled by the trial court to answer over claim of privilege. We subscribe to the decision of the learned court and quote briefly from the opinion of Mr. Justice Miller: " * * * To apply it to prevent normal cross-examination in such a case as the present would unnecessarily encourage deception, and defeat the purpose of cross-examination. 'The court has a right to know that the client whose secret is treasured is actual flesh and blood, and demand his identification, for the purpose, at least, of testing the statement which has been made by the attorney who places before him the shield of this privilege.' United States v. Lee, supra [C.C.], 107 F. 702, at page 704." Tomlinson v. United States, 68 App.D.C. 106, 93 F.2d 652, 655, 114 A.L.R. 1315. See also, State v. Powell, 161 Wash. 514, 297 P. 160.

In addition to these contentions going to the entire case, petitioner has minor objections to some details of the deficiencies assessed. In them, he might be on sounder ground were it not for one thing. That is, the express wording of the statute. As a sanction it goes beyond the particular amount and assesses the jeopardy "if *any part* of *any* deficiency is due to fraud". These plain words leave no room for construction, Nicholson v. Commissioner of Internal Revenue, 38 B.T.A. 190.

So we not only need not, but also must not, consider the alleged investment (not shown by cancelled checks) in the Meglathery, Shelbo and Stoschek mortgages, and the Saucon Valley Trust Company and Industrial Loan Society stock; the alleged loss in Hart Laboratories stock; and in the mistaken certificate of title in the Saucon Valley Building and Loan Association mortgage (Glassmeyer). We conclude by observing that in these matters petitioner did not hesitate to name the names of his clients.

The petitioner's factual case depends entirely on his assertion that the questioned portions of the funds in his bank accounts actually belonged to his clients and were there commingled with his own. So it is unnecessary to cite authorities on the meanings and proof of fraud as contained in the statute, Hanby v. Commissioner, above cited. They are to be found collected in 26 U.S.C.A.Int.Rev.Code, § 293, note 5, page 695.

The decision of the Board of Tax Appeals is affirmed.