### UNITED STATES v. PAPE.
### No. 385.

Circuit Court of Appeals, Second Circuit.
July 21, 1944.

---

780

Henry G. Singer, of Brooklyn, N. Y. (Samuel W. Altman and Sidney H. Levin, both of New York City, on the brief), for appellant.

Harold J. McAuley, Asst. U. S. Atty., of New York City (James B. M. McNally, U. S. Atty., of New York City, on the brief), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Pape appeals from a judgment of conviction under an indictment for transporting a woman in interstate commerce "for the purpose of prostitution, debauchery and other immoral purposes." He raises the following objections: (1) That statements were admitted against him at his trial, made by him to an officer in the Federal Bureau of Investigation after his arrest and before he was arraigned. (Since the delay was of only a few hours and no duress was involved, the point has now been answered by the decision of the Supreme Court in United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, and we may disregard it.) (2) That an attorney retained by him was compelled to disclose that he, the accused, had retained him to appear for the prostitute and had paid his fee. (3) That the evidence would not support a verdict. (4) That the judge refused to call the prostitute as the "court's witness." (5) That the judge misinstructed the jury.

The testimony, if the jury chose to accept it, proved that the woman, charged in the indictment to have been transported, was a prostitute, and known to the accused to be such; and that he and she were living together in a hotel on West 72d Street in New York in July, 1942, as a married couple. The accused owned a Packard motor car, which he was accustomed to park outside this hotel; and on the afternoon of a day which he could not fix, an elevator operator, who was in the habit of doing errands for the accused, loaded into this car two handbags and a steamer trunk, and, when he left work at ten o'clock in the evening, the car was not there. On the morning of July 11, 1942, the accused appeared with the woman at a Washington hotel where they registered as a married couple under a false name. They came in a Packard car in which there were two small bags and a large one. On the 15th a detective arrested the woman as a prostitute after she had admitted him to her bed-room and set the price of five dollars for her favors. This charge was dismissed upon the promise of an attorney, one Buckley, who appeared for the woman, that she would leave town; but on August 29 the detective again found her in Washington, this time in another hotel with fourteen other known prostitutes. She was again released, and the accused took her back to New York. How long he had himself stayed in Washington was in some dispute. The clerk of the hotel to which he took the woman on July 11 spoke of seeing him "in or near" the hotel for several succeeding days, but something less than a week. When he booked the room, he told the clerk he should stay a week or ten days; and he took a double room with double bed, paying the rate for occupancy by two people. The accused himself, when in custody under arrest, declared to a fellow prisoner that he had stayed only "overnight"; that he had taken the woman, with whom he had been living for two years, to Washington because she had come too much under the notice of the New York police; and that he returned to Washington to take her back, after she had in turn become too much involved with the Washington police. He also told this prisoner that they had checked in as man and wife at the Washington hotel, a statement he had also made—after first denying the fact—to the FBI agent at the time of his arrest, with further observation that he did not see that that fact made any difference, and that if the FBI were checking hotels on him they would have to do a lot of checking, for he had registered in numerous hotels with various girls. The accused did not testify or offer any evidence.

From this it is clear that there was ample evidence to support a verdict that the accused had transported the woman from New York to Washington for the immoral purposes interdicted by the statute. As to the purpose of prostitution, he claims the conclusion was reached only through use of evidence of various collateral circumstances, of a kind not merely irrelevant, but also highly prejudicial; this included not only evidence of the purchase and servicing of the Packard car, which was directly relevant, as identifying him with it and thus corroborating other evidence fixing his trip to Washington, but also of several arrests of the woman for prostitution, both before and after the time here involved, and of her working in a

house of prostitution in Saratoga Springs nearly a year before. The latter, however, was admissible on well settled principles particularly applicable to this type of case. The evidence showed that they were living together as man and wife at the time of the arrests, and, indeed, that the arrest just prior to the Washington trip furnished the reason for his taking her away; while it was he who introduced her into the Saratoga Springs house, and when she left a few days later for lack of sufficient business he at least knew of the occasion for her going and her next destination. Obviously an accused will not himself disclose his intent. Hence it is well settled that it may be discovered elsewhere, as from evidence of other similar activities of the accused, such as that he has used the same woman, or some other woman, for like improper purposes. Among numerous cases may be cited Ellis v. United States, 8 Cir., 138 F.2d 612; Neff v. United States, 8 Cir., 105 F.2d 688; Cohen v. United States, 5 Cir., 120 F.2d 139; Baish v. United States, 10 Cir., 90 F.2d 988; Bracey v. United States, App.D.C., 142 F.2d 85; 2 Wigmore on Evidence, 3d Ed.1940, §§ 357, 360.

■ That the evidence was circumstantial, that, indeed, some of the witnesses were not too sure of their dates, or of their identifications of the accused and the woman—all presented issues which were for the jury and were settled by the jury's verdict. We have had occasion to point out that there is no such rule as here claimed by the accused in his requests to charge, that "each circumstance" must be established beyond a reasonable doubt, and that "such circumstances" must "exclude and preclude every reasonable hypothesis other than that of the defendant's guilt." Such a rule would infringe on the jury's function of determining the facts, including reasonable deductions from proven facts. The judge has an over-all duty to decide whether the case is strong enough under the applicable rules of law to go to the jury at all, and then he must admonish the jury of its duty to free the accused if upon all the evidence it is not convinced of guilt beyond reasonable doubt. The admonition, however, is directed to the case as a whole, not to each detail; and it must not be given the stultifying interpretation of preventing the jury from determining by the process of reasonable inference just what actually happened as a fundamental step to reaching its verdict. United States v. Valenti, 2 Cir.,

134 F.2d 362, certiorari denied 319 U.S. 761, 63 S.Ct. 1317, 87 L.Ed. 1712; United States v. Mule, 2 Cir., 141 F.2d 487; United States v. Feinberg, 2 Cir., 140 F.2d 592.

■ The accused objects further that the judge, following the terms of the indictment quoted above, left the case to the jury in the alternative, so that they could find the accused guilty of transporting the woman for the purposes of prostitution or for the purpose of continuing their illicit sexual relations which had begun in New York. He does not deny that the latter would also violate the law, Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas. 1917B, 1168; United States v. Reginelli, 3 Cir., 133 F.2d 595, certiorari denied Reginelli v. United States, 318 U.S. 783, 63 S. Ct. 856, 87 L.Ed. 1150, rehearing denied 319 U.S. 780, 63 S.Ct. 1027, 87 L.Ed. 1725, but argues rather that this was not the theory upon which the prosecution had proceeded. In civil procedure, some vogue has been had for the baleful "theory of the pleadings" or "theory of the case" doctrine, now happily repudiated under the new civil rules, 3 Fed.Rules Serv. 667; 10 Calif. L. Rev. 202; 8 Col.L.Rev. 523; 40 Yale L.J. 311; Clark, Code Pleading, 174–179; but it does not seem to have had place in criminal procedure. It is difficult to see how it could, particularly under modern views of the function of the indictment as serving only as fair notice to the accused of the crime with which he is charged. United States v. Achtner, 2 Cir., 144 F.2d 49, and cases cited. Hence the proper issues in a criminal case are whether the indictment fairly charges a crime as defined by a federal statute and whether the proof, adduced in a fair trial, supports the indictment, not what the prosecutor's legal theories of the case may have been. Here the speeches of counsel are not reproduced, and we know no more of the theory of the prosecution than the evidence suggests. In other words, the point must come only to this that there was not sufficient evidence of this purpose to submit to the jury.

■ But on this the evidence seems to us, if anything, more direct than that upon the alternative purpose to use the woman for hire. Here the evidence that such relations between them did continue in Washington appears most directly and without the need of resort to inference. True, incidental sexual intercourse, not the purpose of the trip, is not sufficient under

the statute, Sloan v. United States, 8 Cir., 287 F. 91; but here the evidence of purpose seems adequate. The accused and the woman were living together in New York; police interference made it, if not necessary, at least highly desirable, that they leave; they went to Washington and in fact did continue to hold themselves out and act as husband and wife. Certainly the inference that they intended to continue, not to break, their relationship is, at the very least, permissible. United States v. Reginelli, supra. Indeed, the only suggestion to the contrary apparently is that the two roles of mistress and prostitute are too incompatible to be accepted without direct evidence of defendant's state of mind—a suggestion which perhaps cuts more against his use of her as a prostitute, in view of the clear proof that she continued as his mistress in Washington. But even if sad judicial experience in this type of case should not dislodge us from the ivory tower of such a belief, the proof here of the accused's way of life with the woman in New York thoroughly demonstrates that he found no incompatibility in the two relationships. The suggestion that the government must prove absence of marriage hardly can be intended seriously. Even if, contrary to Blain v. United States, 8 Cir., 22 F.2d 393, 395, the burden of proving such a negative should be held to rest upon the prosecution, there are many subordinate facts here from which the jury could deduce that the parties were not married, particularly in the absence of any facts or even contention to the contrary.

 There remain the two rulings on evidence. One may be shortly disposed of. The judge was not obliged to call the woman, whom neither the prosecution nor the accused put on the stand. She was equally available to the defense; and if they called her, they would not have been in any way concluded by what she said, though, of course, it would have been extremely damaging if she proved hostile. True, they could not impeach her credibility once they had called her, but there is no reason to suppose that they could not find out what she would say. The judge might indeed have called her to the stand, had he thought best; but the notion that he must so far have taken a hand in the trial is wholly untenable. 9 Wigmore on Evidence, 3d Ed., § 2484; cf. 3 ibid. § 784.

 The other point, as to the testimony of the attorney, Buckley, is of some interest. Buckley appeared for the woman in Washington when she was first taken up by the police, and she was discharged in his custody. On preliminary examination the judge developed that he was retained by the accused about July 15, 1942, to represent the woman as well as the accused—for what purpose, so far as the latter was concerned, never appeared. The judge first excluded all conversation with the accused and allowed only the question whether the attorney saw the accused in the city of Washington. The next day he said counsel had checked the cases; and relying on People ex rel. Vogelstein v. Warden of County Jail, 150 Misc. 714, 270 N.Y.S. 362, affirmed without opinion 242 App.Div. 611, 271 N.Y.S. 1059, ruled that the fact of the retainer was admissible. He proceeded to make his ruling explicit by saying that the lawyer could be asked who retained him to appear for the woman on the occasion in question and who paid his fee, identifying the persons if they were in court. Further, he held other matters of observation not privileged—including the accused's presence in Washington and in an automobile of a certain kind or make; and as to these matters, defendant's counsel stated he had no objection. When the jury returned, these limitations were strictly carried out, so much so that all questions as to whether the attorney was retained to represent anyone else than the woman were rigidly excluded. The lawyer did, therefore, testify that the accused retained him to represent the woman and paid his fee, also that he saw the defendant in Washington and that he had a Packard automobile. Of course, practically all this was merely cumulative; the court records were produced and showed that the woman was indeed released to the attorney; and the only additional fact brought out was that the accused's clearly proved interest in the woman went to the point of retaining and paying for a lawyer to secure her release.

The authorities are substantially uniform against any privilege as applied to the fact of retainer or identity of the client. The privilege is limited to confidential communications, and a retainer is not a confidential communication, although it cannot come into existence without some communication between the attorney and the— at that stage prospective—client. United States v. Lee, C.C.E.D.N.Y., 107 F. 702; Tomlinson v. United States, 68 App.D.C. 106, 93 F.2d 652, 655, 114 A.L.R. 1315,

with note collecting the authorities, 1321–1333, certiorari denied 303 U.S. 646, 58 S.Ct. 645, 82 L.Ed. 1102; Mauch v. Commissioner of Internal Revenue, 3 Cir., 113 F.2d 555; 8 Wigmore on Evidence, 3d Ed. § 2313. People ex rel. Vogelstein v. Warden of County Jail, supra, contains a complete discussion of the authorities which leaves nothing further to be said. Elliott v. United States, 23 App.D.C. 456, illustrates the possibility that there may be situations in which so much has already appeared of the actual communications between an attorney and a client, that the disclosure of the client will result in a breach of the privilege; but nothing of the sort occurred here. Chirac v. Reinecker, 11 Wheat. 280, 294, 295, 24 U.S. 280, 6 L. Ed. 474, sustained the privilege in circumstances where it would hardly be sustained today, but nevertheless left it open that the mere disclosure of the name of the client would not be a breach.

It seems clear on the authorities, therefore, that the evidence actually brought out before the jury was not privileged. There seems nothing in the preliminary disclosure to the judge that the attorney was also to represent the accused to change this result. Indeed, it would seem that the prosecutor was entitled to ascertain the full scope of the attorney's employment as the only means of presently discovering what evidence he could and what he could not use out of the various matters for which the witness had been produced. But, be that as it may, no such evidence was allowed to go to the jury. That being so, we know of no principle, and have found no case, which keeps the unprivileged matter out of the full record going before the jury. A party surely is not entitled as of right to an exclusory ruling in the absence, and, so to speak, behind the backs, of the triers; rather the interests of all parties are usually better served by showing openly how and in what way the evidence must be truncated. And it would be unfortunate if we found error against this judge because he was careful to develop and study the problem in the jury's absence, rather than rule boldly and swiftly in their presence. But the basis for admissibility is broader than respect for mere matters of trial procedure. Generally speaking, relevant evidence is freely admissible, except as it is privileged; and the privilege extends only so far as the policy behind it demands. Here, as Mr. Justice Shientag shows with his usual fe-

licity, People ex rel. Vogelstein v. Warden of County Jail, supra, 150 Misc. 714, 270 N.Y.S. at page 367, "it was not the purpose of the privilege to shield guilt. Its primary object was to secure the orderly administration of justice by insuring frank revelation by the client to the attorney without fear of a forced disclosure; in other words, to promote freedom of consultation. To be sure the exercise of the privilege may at times result in concealing the truth and allowing the guilty to escape. That is an evil, however, which is considered to be outweighed by the benefit which results to the administration of justice generally."

He adds, "There is nothing in the books to show that the privilege was to extend to the fact of the retention of counsel. No point is made that the employment of counsel should be shrouded with secrecy." Hence when the narrow exclusionary rule ceases to apply, then the more general and pervasive rule of free disclosure to ascertain the truth and prevent the guilty from escaping furnishes the governing principle.

Conviction affirmed.

L. HAND, Circuit Judge (dissenting).

The evidence of the accused's guilt was so strong that I feel some compunction in voting to reverse, yet there are two errors which I think require the case to be retried. Pape retained Buckley as his own lawyer at the same time that he retained him for the woman. I agree that his retainer of an attorney for himself involved no privileged communication; I have nothing to add to, or subtract from, what my brothers say on that. Moreover, it goes without saying that Pape's retainer of Buckley for the woman would not have been privileged, had he not retained him as his own attorney. On the other hand I attach no importance to the fact that he retained him in both capacities at the same time; the case stands as it would, if he had retained him for himself first. Yet if he had done that, when he told him to appear for her, I think it was a communication between attorney and client, a step in his own defence; it may have been also a step in hers but that, I submit, is irrelevant. That direction to his own attorney in his own interest was as much a privileged communication as any direction would have been, made in the course of preparing for a trial; as much, for example, as to tell one's attorney to interview a witness. That it was an important step in connecting him

with the woman's prostitution, admits of no debate.

Moreover, I do not believe that the evidence justified a conviction on the alternative theory which the judge left to the jury. I do not of course mean that the jury was not free to find that Pape and the woman continued in Washington the same relations which had been going on in New York; but I do mean that that was not enough. Only the purpose for which he took her from New York to Washington, was relevant; and, while it is conceivable that the trip may have been in part actuated by the purpose of continuing to enjoy her as he had been doing, that seems to me too doubtful to justify a conviction—the merest speculation. To repeat: no doubt he expected that they would go on as they had, but unless that expectation was a part of his motive, it did not count. I should think it almost certain that it was not; almost certain that he would have taken her though he knew he was merely to drop her at the hotel and return to New York; I see no reasonable ground for supposing that he was led to bring her on except to live on her earnings. In a sense this really only serves to confirm his guilt, because it presupposes that the evidence of that purpose was so predominant as to exclude any other. Perhaps so, but if the charge was wrong, it was wrong in too substantial matter to be disregarded.