DENNIS S. GOLD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RespondentGold v. CommissionerDocket No. 7185-80.United States Tax CourtT.C. Memo 1981-464; 1981 Tax Ct. Memo LEXIS 282; 42 T.C.M. (CCH) 872; T.C.M. (RIA) 81464; August 26, 1981. *282 William S. Brandt, for the petitioner. Sergio Garcia-Pages, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1976 and 1977 in the amounts of $ 10,438.90 and $ 1,008, respectively, and additions to tax under section 6653(a) 1 in the amounts of $ 521.94 and $ 50.40 for these respective years. The issues for decision are (1) whether petitioner has shown that respondent incorrectly increased his 1976 taxable income as reported on his return by $ 25,000 which petitioner used to purchase Treasury bills, (2) whether petitioner has shown that respondent incorrectly increased his taxable income for 1976 and 1977 in the amounts of $ 3,563 and $ 3,979, respectively, for unreported interest income with respect to the Treasury bills purchased, and (3) whether petitioner is liable for the additions to tax under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are*283 found accordingly. Petitioner, who resided in Naples, Florida, at the time of the filing of his petition in this case, filed Federal income tax returns for the calendar years 1976 and 1977 with the Andover Service Center in Andover, Massachusetts. Petitioner graduated from Brooklyn Law School in May 1974. He took the New York bar examination in the summer of 1974 and worked for a short while for a law firm in Monticello, New York, before becoming employed by the Sullivan County District Attorney's Office. During both of the years here in issue, petitioner was employed by the Sullivan County District Attorney's Office. Petitioner received a salary of $ 13,000 in 1976 and $ 14,352 in 1977 from Sullivan County for his work as an assistant district attorney. The work petitioner did in the Sullivan County District Attorney's Office was criminal work and he was permitted to maintain a private civil practice during any time he was not engaged in his official duties as an assistant district attorney. During each of the years here in issue, petitioner did engage in some private practice of law. In late 1978 petitioner became dissatisfied to some extent with his employment as an assistant*284 district attorney in Sullivan County and began investigating a change in employment. In late 1978 or early 1978 he decided to move to Naples, Florida, to engage in the practice of law. He moved to Naples, Florida, in early September 1979. During the years here in issue, petitioner was unmarried. However, in 1974 and the early part of 1975 petitioner was married to Louise D. Gold. He and the then Mrs. Gold resided in 1974 at 173 Maple Avenue, Woodridge, New York, and in the early part of 1975 at 173 Greenfield Road, Woodridge, New York. Later in 1975 after petitioner's divorce, he moved to 576 Greenfield Road, Woodridge, New York. The following shows the date petitioner submitted a tender offer or subscription for purchase of Treasury bills or notes, the maturity date of the bills or notes petitioner purchased, and the face amount of the bills or notes petitioner purchased during the years 1974, 1975 and 1976: Date Applied ForMaturity DateAmount2-22-748-29-74$ 10,0002-22-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,0004-19-7410-24-7410,0005-3-7411-4-7410,0005-3-748-8-7410,00012-19-7412-31-7610,00010-6-7512-31-7815,00010-28-7511-15-8210,0005-3-765-15-865,0006-1-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,0008-2-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,000*285 On each of the applications, petitioner marked the instruction "Ship to the undersigned." On all of the applications for the year 1974, petitioner showed his address to which the bills should be shipped as 173 Maple Avenue, Woodridge, New York. On the 1975 and 1976 applications, petitioner showed the address to which the bills were to be shipped as 576 Greenfield Road, Woodridge, New York. Each of the applications filed by petitioner contained the following instruction or something of similar import: 2. Only banking institutions, and dealers who make primary markets in Government securities and report daily to this Bank their positions with respect to Government securities and borrowings thereon, may submit subscriptions for customer account. Others will not be permitted to submit subscriptions except for their own account. The applications for the longer-term notes made by petitioner on December 19, 1974, and during the years 1975 and 1976 contained a statement-- Subject to allotment please issue, deliver, and accept payment for the notes as indicated below and on the reverse side (if registered notes are desired, please also complete schedule on reverse side): Petitioner*286 did not complete the schedule requesting registration of the notes on any of the applications, and on the application dated June 1, 1976, is written in handwriting under "Special instructions" the word "Bearer." On February 20, 1975, an application for a 182-day $ 10,000 Treasury bill maturing August 28, 1975, was made and signed by Louise D. Gold, 173 Greenfield Road, Woodridge, New York, with the instruction "Ship to the undersigned." Petitioner filed with his 1976 income tax return a Schedule C reporting a loss of $ 1,930.81 from his private practice of law. With his 1977 income tax return he filed a Schedule C reporting a loss of $ 1,861.58 from his private practice of law. On his 1976 return petitioner reported $ 299.10 of interest income from "Federal savings" and $ 203.62 of interest income from "Bank of Montreal." He also attached to this return a Form 4683 stating that he had a financial interest in a foreign account and a Form 1116, "Computation of Foreign Tax Credit," showing dividends of $ 203.85 from Canada and a claim of a foreign tax credit with respect to this income of $ 30.57. Under date of July 30, 1979, there was addressed to petitioner a letter from the*287 Internal Revenue Service (IRS) office in Newburgh, New York, stating that his tax returns for the years 1976 and 1977 were under investigation. This letter set up an appointment for petitioner with an IRS employee on September 11, 1979. Attached to the letter was a request that petitioner bring records with respect to "Other Income." Petitioner, under date of August 2, 1979, replied to this letter, inquiring whether he could answer the request by mail or by representative since he would not be living in New York after September 3, 1979. Petitioner in his letter of August 2, 1979, also requested that he be advised "what information you are requesting." Petitioner later, in a telephone conversation, arranged a date to meet with a representative of the IRS in August 1979. At the meeting in August he was handed a document marked "Information Document Request" which requested the names and addresses of the individuals for whom he had purchased notes and photocopies of savings accounts showing deposits and withdrawals. Under date of September 27, 1979, petitioner wrote a letter to the representative of the IRS with whom he had met in Newburgh, New York. In this letter he referred to*288 a conversation on August 28, 1979, and the request for records. He stated: I wish to advise you that I am unable to locate any records of the transactions in question. As I indicated before, I discarded most, if not all, of my papers and files in anticipation of cutting the expense of moving * * *. This letter further stated as follows: Additionally, it would be improper, unethical and unprofessional to reveal the names of clients that have sought my legal advice and services. It would further be a breach of the attorney-client privilege to do so. As a professional man yourself, I am sure you can understand my position. Under date of December 6, 1979, petitioner received a written statement of proposed adjustments to his tax liability for the years 1976 and 1977. Under date of December 20, 1979, he responded that he disagreed with the findings in the December 6 statement and further stated: I am an attorney-at-law who made these purchases of securities on behalf of clients who engaged my services for preparation of Wills, Estate Planning, Social Security retirement benefits and related areas. For my professional services I was paid a fee which was reported and reflected*289 in my schedule C for the respective year. To list those persons who sought my advice as an attorney and counselor at law would be unethical, improper and unprofessional. * * * This letter explained to an appreciable extent petitioner's views as to why the names of clients should not be disclosed. In his notice of deficiency issued to petitioner for the years 1976 and 1977 respondent increased petitioner's income by adding thereto $ 25,000 of "other income" and $ 3,563 of "interest income" for 1976 and by adding to petitioner's 1977 income as reported $ 3,979 of "interest income" with the following explanation: a. OTHER INCOME (PURCHASE OF TREASURY BILLS): $ 25,000.00 For the year 1976 it has been ascertained that you realized income in the amount of $ 25,000.00 which was used to purchase treasury bills. This income was not reported on your return when filed; accordingly your taxable income for 1976 is increased to reflect this understatement. b. INTEREST INCOME: 1976 - $ 3,563.00 1977 - $ 3,979.00 It has been determined that the interest income reported on your return for each of the years 1976 and 1977 was understated $ 3,563.00 for 1976 and $ 3,979.00 for the year*290 1977. Your taxable income for each of these years is increased by the amount of the understatement. OPINION The issue in this case is factual. It is well settled that there is a presumption of correctness to the determination by the Commissioner and the burden is on petitioner to show error in that determination. As we pointed out in Roberts v. Commissioner, 62 T.C. 834, 835 (1974)-- In most cases, if the Commissioner or a member of his staff determines that there is a deficiency in any tax, the petitioner then has the burden of proving such determination to be incorrect. Welch v. Helvering, 290 U.S. 111 (1933); Burnet v. Houston, 283 U.S. 223 (1931); Fuller v. Commissioner, 313 F.2d 73 (C.A. 6, 1963), affirming on this issue a Memorandum Opinion of this Court. However, if the petitioner can show that the determination by the Commissioner was arbitrary and unreasonable, the burden of proof is shifted to the Commissioner. Helvering v. Taylor, 293 U.S. 507 (1935). Since petitioner refused to furnish representatives of the IRS with the names of persons for whom he claims he purchased Treasury*291 bills or notes, and did not produce the records requested by the IRS to show the source of the funds with which such bills and notes were purchased, the Commissioner's determination was clearly not arbitrary or unreasonable. Petitioner does not specifically contend that the Commissioner's determination is arbitrary or unreasonable. His contention is that he purchased the $ 25,000 worth of Treasury notes in 1976 for unnamed clients. In fact, his testimony is that all of the Treasury bills he purchased in 1974 and 1975 were also for unnamed clients. He testified: And I purchased it with their money, and I don't deny sending these applications in and I don't deny buying them. But I did not buy them for myself. Petitioner refused to name the clients for whom he made the purchases stating instead with respect to his refusal to furnish such names as follows: I wasn't able to comply with it to give him any kind of an accurate list, because I didn't have anything. The list -- the list of names of people that had come to me for different things, I couldn't say that the list that I would give him would be an accurate indication of who the recipients were. And I felt, by giving*292 a blanket list of names, is breaking or breaching client privileged communication with an attorney, that I would be subjecting these people to harassment by the Internal Revenue Service. And that was it. Petitioner explained that he could not provide the records which would show any withdrawals from his bank accounts or whether the purchases were made by his check or by the check of another individual or a cashiers' check because he had thrown away all of his records when he came to Florida. He testified: I threw out all these different records which I never thought I would ever need. I threw out books and what have you, because to move down to Florida or to move any place, they charge you by the pound. * * * There's no, you know, sense taking all the stuff you accumulate. I would have absolutely no need for it. And that's how this thing came about. * * * Petitioner was insistent at the trial that he would not furnish the names of the clients for whom the bills and notes were purchased because of the "attorney-client" privilege and that he had discarded the records that might show the source of the funds with which the Treasury bills and notes were purchased prior to*293 the beginning of the investigation of his 1976 and 1977 returns by the IRS. Because of petitioner's refusal to furnish the names of the persons for whom he claims to have purchased Treasury bills and notes so that representatives of the IRS could verify his statement, he in effect is contending that his return should be accepted as filed because he says it is correct. Petitioner has not only refused to furnish the names of the persons for whom he contends he purchased the Treasury bills and notes but also has produced no records of any of his transactions. On the basis of this record we, conclude that petitioner has failed to carry his burden of proof that there is any error in respondent's determination. See Rule 142(a), Tax Court Rules of Practice and Procedure.The law clearly does not support petitioner's position that he could not disclose the names of the persons for whom he purchased Treasury bills and notes because of an attorney-client relationship. Also, petitioner was not an attorney in 1974 and therefore there could have been no attorney-client relationship with respect to any purchases he made during that period. At the trial, when petitioner was asked about*294 a bank account he might have had with an individual by the name of Max Chavis, he did not hesitate to explain that Max Chavis was a client. 2 This testimony refutes petitioner's contention that he believed to disclose the name of a client violates the attorney-client privilege. As was pointed out in Colton v. United States, 306 F.2d 633, 637 (2d Cir. 1962) -- the identity of*295 a client, or the fact that a given individual has become a client are matters which an attorney normally may not refuse to disclose * * *. United States v. Pape, 144 F.2d 778 (2 Cir.), cert. denied, 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944); Behrens v. Hironimus, 170 F.2d 627 (4 Cir. 1958); Goddard v. United States, 131 F.2d 220 (5 Cir. 1942); People ex rel. Vogelstein v. Warden, 150 Misc. 714, 270 N.Y.S. 362 (Sup.Ct. 1934), aff'd mem. 242 App. Div. 611, 271 N.Y.S. 1059 (1st Dept. 1934); 8 Wigmore, Evidence sec. 2313 (McNaughton rev. 1961); McCormick, Evidence sec. 94 (1954). * * * See also United States v. Jones, 517 F.2d 666, 670-671 (5th Cir. 1975), and cases there cited in Footnote 2. Petitioner, here, has made no showing why he could not have disclosed the names of any persons for whom he purchased Treasury bills or notes. The attorney-client privilege protects only confidential disclosures by a client made to an attorney in order to obtain legal assistance. Fisher v. United States, 425 U.S. 391, 403 (1976). The purchase of Treasury bills or notes for another*296 is not within the normal concept of legal services. See United States v. Brickey, 426 F.2d 680, 685 (8th Cir. 1970). Petitioner, here, is attempting to use the claim of attorney-client privilege to justify refusal to permit an investigation of his tax returns. As was stated in Mauch v. Commissioner, 113 F.2d 555, 556 (3d Cir. 1940), affg. 35 B.T.A. 617 (1937), "The record discloses no offer by the petitioner to obtain the permissible waiver from his anonymous clients." The taxpayer in the Mauch case offered in explanation of unexplained bank deposits the statement that the funds came from persons he served as an attorney and because of the attorney-client privilege he could not disclose the names of the clients whose money was deposited. In the Mauch case the circuit court upheld this court's refusal to accept the testimony that funds belonged to a client where the attorney refused to disclose the name of the client. The court stated in the Mauch case as follows with respect to attorney-client privilege (supra at 557): "* * * To apply it to prevent normal cross-examination in such a case as the present would unnecessarily*297 encourage deception, and defeat the purpose of cross-examination. 'The court has a right to know that the client whose secret is treasured is actual flesh and blood, and demand his identification, for the purpose, at least, of testing the statement which has been made by the attorney who places before him the shield of this privilege.' United States v. Lee, supra [C.C.], 107 F. 702, at page 704." Tomlinson v. United States, 68 App.D.C. 106, 93 F.2d 652, 655, 114 A.L.R. 1315.See also, State v. Powell, 161 Wash. 514, 297 P. 160. Similarly, in the instant case we do not accept petitioner's explanation that the Treasury bills and notes were purchased for clients whose names are not disclosed. Certainly petitioner while he was in the private practice of law must have kept records of funds given to him by clients and an account of the disposition of those funds. His 1976 tax return shows that he had savings accounts. He must have had records of deposits and withdrawals from those accounts which could have been supplied on the request of the IRS employee. He received the first notice of his return being investigated before he moved to Florida. *298 He testified that when he received the request to submit his records to the IRS, he had already destroyed them in preparation for moving. It is difficult to understand, if this were the fact, why he stated in the letter he wrote to the examining officer on August 2, 1979, "I would further appreciate your advising what information you are requesting." It would seem that if his records were all destroyed, he would have said so at that time and if they were not destroyed on August 2, 1979, he would have kept all of his records until after his returns were investigated. As was pointed out in Doyal v. Commissioner, 616 F.2d 1191, 1192 (10th Cir. 1980): Taylor does not create an exception to the usual presumption in favor of the Commissioner's figures. The taxpayer retains the burden of showing that the Commissioner's determination was arbitrary and excessive--a burden not met by the taxpayers in this case. Only if the taxpayer meets that burden must the Commissioner prove the precise deficiency at issue. This limited exception clearly does not permit a taxpayer to violate the law by denying the I.R.S. access to his records, see I.R.C. sec. 7602*299 , and thereby obtain a legal advantage by shifting the burden of proof. When the I.R.S. is given no data upon which to calculate the proper tax, it has no choice but to enter a deficiency notice for the entire amount deducted. * * * See also Roberts v. Commissioner, 62 T.C. 834, 835-837 (1974). This case is not to be compared with a case in which the Commissioner has any burden placed on him by statute or by the rules of this Court. As the court pointed out in Armes v. Commissioner, 448 F.2d 972 (5th Cir. 1971), affg. in part and revg. in part a Memorandum Opinion of this Court, where the question is the correctness of a determination of additional income made by the Commissioner in a deficiency notice issued while the ordinary statute of limitations is open, the burden is on the taxpayer to show error in that determination. Where the only evidence introduced was the testimony of the taxpayer that the amount determined by the Commissioner as additional income was received as an investment from someone else and the Court did not believe that testimony, the taxpayer had failed to carry his burden of proving error in the Commissioner's determination. *300 In the instant case we do not believe petitioner's testimony that the $ 25,000 of Treasury notes which he purchased in 1976 were purchased for clients with money supplied by those clients. Had this been the fact, in our view, petitioner would have disclosed the names of the clients and would have produced his own records to show the deposits and withdrawals of the clients' funds or the notations made of receipt of moneys from the clients. Certainly he would have been able to state in what form those moneys were received. However, when asked by his own attorney about the procedure he followed in purchasing the Treasury bills and notes, he stated that "They would give me a check for this thing, and I, in turn, would submit the application for it." When asked what type of check, he stated, "well, it was either a bank check or--I don't think it was a personal check; I think it was bank check or a certified check, something like that." Also, petitioner gave no adedquate explanation of why he would violate the instruction on the applications that an individual was not permitted to submit tenders for other than his own account. Had petitioner been submitting the tenders for clients, he*301 should have submitted them in the name of the client and had them signed by the client. He offered no explanation of why this was not done. On the basis of this record, we conclude that petitioner has failed to show error in respondent's determination.There is no evidence in this record to show any error in respondent's determination of the amount of interest received in 1976 and 1977 on the Treasury notes purchased in 1976.Since petitioner has failed to show that he did not own these notes, he has also failed to show any error in respondent's determination of the interest income he received in 1976 and 1977. The final issue is whether respondent properly determined the addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. The burden of showing error in this determination is on petitioner. Courtney v. Commissioner, 28 T.C. 658, 669 (1957). For the same reasons we conclude that petitioner has failed to show error in respondent's determination of deficiencies, we conclude that he has failed to show error in respondent's determination of additions to tax under section 6653(a) for each of the years here in issue. *302 Decision will be entered for the respondent. Footnotes1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩2. Petitioner testified as follows: Q Is it not true that you had a joint checking account with one Max Chavis, and the account number was 01-204-444, at the Ellensville National Bank in Ellensville, New York? A I'll tell you -- Q Did you or did you not -- A -- if I did, I don't ever recall ever writing any one of those checks, and I don't even recall what the purpose would have been that I would have had an account there. Q Who -- who -- who is Max Chavis? A He's a client of mine. Q What type of client? A On, I don't know, I think he once -- he asked me about Bulk Sales Act, Uniform Commercial Code, from what I remember. Q What kind of business was he in? A At that time, I don't know if he was retired or he was a fuel products distributor. One or the other.↩