RUSSELL C. MAUCH AND BESSIE MAUCH, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, REPONDENT.

Docket No. 72269. Promulgated March 10, 1937.

618

*Everett . Kent, Esq.*, and *Milton J. Goodman, Esq.*, for the petitioners.

*I. Graff, Esq.*, for the respondent.

OPINION.

MURDOCK: The evidence shows that the petitioner, Bessie Mauch, had no income for 1929 and 1930 and took no part in filing the returns. The respondent no longer contends that she is liable for any part of the deficiencies or penalties; therefore, decisions will be entered holding that there are no deficiencies or penalties for either year as to her.

Russell C. Mauch, herein referred to as the petitioner, contended in his petition that the determination of the deficiency for the year 1929 was barred by the statute of limitations. However, consents were duly executed extending the statutory period so that the statute of limitations in no way bars the Commissioner in respect of deficiencies or penalties due from Russell C. Mauch for the years 1929 and 1930. The petitioner no longer argues this point and it needs no further discussion.

The petitioner contends that, since he was indicted in the United States District Court for willfully attempting to evade or defeat taxes upon his net income for the years 1929 and 1930 in violation of section 146 (b) of the Revenue Act of 1928 and was found not guilty by a directed verdict, the imposition of the fraud penalties here is barred. A similar question was considered and decided adversely to the contention of the petitioner in *Charles E. Mitchell*, 32 B. T. A. 1093. The Board here adheres to the position which it took in the *Mitchell* case. See also *William R. Scharton*, 32 B. T. A. 459.

The principal issue in this case is the one relating to fraud. The petitioner made no assignment of error relating to fraud in his amended petition, but sought to avoid the effect of the Commissioner's determination solely on the ground that the additions to income were improper and, consequently, no deficiencies could exist. He failed to reply to the allegations of fraud contained in the Com-

missioner's answer. Long after the time to reply had passed, he asked leave to file a reply at the time of the hearing. He gave no valid reason for being permitted to file a reply at that late date denying the Commissioner's allegations, and his request was denied. Thus, he came to trial with the allegations of fraud contained in the answer deemed to be admitted. See Board's Rules 14, 15, and 18. *F. O. Statler*, 27 B. T. A. 342. There is a strong intimation in the pleadings that the petitioner does not contest the fraud penalties except by way of defending against the deficiencies. But, however that may be, the allegations of fraud in the Commissioner's answer which are deemed to be admitted, together with the evidence in the case, establish in a clear and convincing fashion that a part of each of the deficiencies is due to fraud with intent to evade tax.

Moreover, the Commissioner does not have to rely in this case upon the petitioner's failure to reply. The statute imposes the penalty where any part of the deficiency is due to fraud with intent to evade tax. Sec. 293 (b), Revenue Act of 1928. The Commissioner has the burden of proof (sec. 907 (a), Revenue Act of 1924, amended by sec. 601), but does not have to prove that all of the understatements were fraudulent. It can be assumed that the petitioner has denied all of the facts relating to fraud and that the Commissioner has not been relieved in the slightest in his burden of proof on the fraud issue by the petitioner's failure to plead properly; nevertheless, the evidence establishes affirmatively that a part of each deficiency is due to fraud with intent to evade tax. Thus the Commissioner did not err in determining that the fraud penalties are due.

The petitioner's failure to keep adequate books and records from which his correct income tax liability for these years could be determined forced the Commissioner to resort in his investigation to bank records and other available sources of information. The petitioner received and deposited in his general account at various times during both of these years large sums of money which he did not report in his income tax returns, and the receipt of which he has repeatedly refused to explain. The petitioner admits that he received most of these amounts in cash and commingled them with his own funds by depositing them in his bank account. He says that these amounts were received from clients, and, when he was confronted with the evidence and was asked whether he had not used the funds for his own purposes, he replied that it looked that way. There is, for the purpose of deciding the fraud issue, no material difference between the parties in regard to the purposes for which withdrawals from the petitioner's accounts were made or in regard to the deductions to which he is entitled. That is, their differences

are slight compared with the amounts here involved. The evidence clearly shows that the petitioner freely used all of the funds now under discussion as his own property. The real question in the case is to determine whether or not the evidence shows that these funds were income to the petitioner. If it does not, then the Commissioner has failed to prove fraud. But if the evidence shows that these sums were income to the petitioner, then the only serious challenge to the Commissioner's determination of the fraud penalties has been successfully met.

The Commissioner has been unable to determine the exact source from which the petitioner obtained the funds or the precise purpose for which they were paid to the petitioner. The petitioner was a witness in the case and was asked to explain their receipt and to show, if he could, that they were not income to him for these years. He refused to make any explanation except to say that they were trust funds, and a confidential relationship between himself and his clients prevented him from making further disclosures. He did not refer to any trust instrument, grantor, or beneficiary. A proper fiduciary relationship may be sufficiently disclosed for the purpose of a case like the present without violating any confidence placed in the fiduciary. 5 Wigmore on Evidence, §§2286, 2296. If the petitioner meant to use the phrase "trust funds" in a straightforward manner and to say that the funds were received by him in a fiduciary capacity rather than in an individual capacity for his own uses and purposes, then, speaking bluntly as the necessity of the case requires, we do not believe the petitioner on his oath. He has not told "the truth, the whole truth, and nothing but the truth" as he was sworn to do. We have not failed to believe him in this respect without good reason, but have been led to the conclusion by observing him on the stand, by considering the manner in which he gave his testimony, and by considering his testimony in the light of the uncontroverted evidence in the case. He did not keep separate account of the funds, as a fiduciary would be required to do, and he used the funds for his own purposes, which a fiduciary could not do without violating his trust. Nor do we believe that his failure to testify fully in regard to these matters was due to any pure or altruistic motive springing from a proper confidence placed in him as an attorney by a client. Cf. 5 Wigmore on Evidence, §2292; *Alexander* v. *United States*, 138 U. S. 353. If, however, when he used the phrase "trust funds", he meant to give it some subtle meaning, such, for example, as ill-gotten gains which he was not lawfully entitled to receive, nevertheless, his position would be no better for gains of that kind, retained without adverse claim, represent income. Cf. *United States* v. *Sullivan*, 274 U. S. 259.

The taxpayer, of course, did not have to make out a case of fraud against himself. His refusal to explain and his failure to make any valid affirmative defense does nothing to support the Commissioner's burden of affirmatively proving fraud, except, perhaps, in one respect. The fact that large unexplained amounts passed through the petitioner's accounts in these years is not alone sufficient to justify the conclusion that the funds were all income, yet it is substantial evidence to be considered in determining the question. *Oliver* v. *United States*, 54 Fed. (2d) 48. The fact that he used the funds for his own private purposes is likewise important. *Robert Burd*, 19 B. T. A. 734. In such cases the conclusion that the receipts were income is sometimes drawn from the evidence as a whole because no other conclusion seems reasonable. *Pincus Brecher*, 27 B. T. A. 1108. If the receipt by the petitioner of the funds in question did not represent either a gift to him or a return to him of his capital, then their receipt must represent income to him. Not only has the petitioner never contended that the receipt of the funds represented a gift to him or a return of his capital, but he has made an explanation which is wholly inconsistent with the funds being either a gift or a return of capital. The defense of a gift or a return of capital would have been so simple and so effective that the failure of the petitioner to raise it and the fact that he has given another and wholly inconsistent explanation of the receipt of the funds may be taken as a concession on his part that the funds were neither a gift nor a return of capital. The foregoing conclusion may be logically drawn even though we do not believe the petitioner's testimony that the funds were trust funds. The rule that a statement of a witness may not be disbelieved for one purpose and believed for another is not being violated. We are not believing his statement for any purpose, but are simply reasoning that, since he gave one explanation, it is fair to assume that the factual basis for a wholly inconsistent and yet effective explanation did not exist. The evidence is that at the beginning of these taxable years the petitioner's estate did not include these funds in any form whatsoever. The fair deduction from all of the evidence is that the petitioner did not receive the funds either as a gift or as a return of capital.

Thus the respondent has made out this case on the fraud issue; the petitioner received substantial sums in each year from unnamed clients; these sums were not the return of capital or a gift to the petitioner; they were deposited by the petitioner in his bank account along and commingled with other funds belonging to him; and they were used freely by him for his own benefit and enjoyment. The statutory definition of income clearly includes items such as these.

The petitioner not only failed to keep proper records of the receipt of these funds, but he failed to report them as income. The evidence of fraud is clear and convincing in respect of these items.

There is other evidence entirely separate from that above discussed sufficient to establish fraud in this case. The Commissioner not only alleges that there was fraud in failing to report the amounts discussed above, but he also alleges that attorney fees were fraudulently omitted. The petitioner reported attorney fees for 1929 in the amount of $6,622.71 and for 1930 in the amount of $13,178.96. The evidence clearly establishes that the petitioner received fees of $11,507.38 in 1929 and of $15,745.10 in 1930. These are entirely separate from his salary as district attorney which is in no way involved in this proceeding. The petitioner said that the figures shown in his return were prepared by his stenographer and a man whom he had employed to make his returns. He said that these two went over all his records, including his check books and deposit slips, and he signed the returns without going over them "with any degree of care." The petitioner's witness Margolis, a certified public accountant, went over these same records in 1933 and found fees of $11,-507.38 for 1929 and $15,745.10 for 1930. He testified that generally the items were designated as fees on the deposit slips or original records. The petitioner was on a cash receipts and disbursements basis. After due allowance for deductible expenses of his business, a gross understatement of attorney fees remains. His failure to report these fees is not relieved of its force as proof of fraud by a showing on the part of the petitioner of any ameliorating circumstances. Cf. *Harry Feldman*, 34 B. T. A. 517; *Frank A. Weinstein*, 33 B. T. A. 105; *Charles J. Delone*, 34 B. T. A. 1139; *Liberty Hosiery Mills*, 31 B. T. A. 64. Other understatements not discussed have not been considered in deciding the fraud issue.

The issue relating to the deficiencies is quite different from that relating to fraud in this respect; the Commissioner's determination of the deficiencies is presumed to be correct and the taxpayer has the burden of showing that it is incorrect. Here again the principal items in controversy are the unexplained amounts deposited in his bank accounts. Obviously he can not avoid the effect of the Commissioner's determination by refusing to explain how he obtained the amounts or the purposes for which he received them. As has been stated, we do not believe his statement that they were trust funds. Consequently, it has not been shown that the Commissioner committed any error in including these amounts in income for the purpose of determining the deficiencies. On the contrary, the evidence supports the determination of the Commissioner, as already appears from the foregoing discussion. The petitioner has failed to show

that other additions made by the Commissioner were not income, such as the amounts paid in cash for stock and mortgages. The petitioner received $520.26 in 1929 and $332.78 in 1930 from Northampton County to reimburse him for part of his office expenses. The reason for this was that the county failed to supply him with an office for his work as district attorney and, therefore, made this adjustment. The petitioner, however, got at least a part of his office space rent free, as compensation for representing the owner of the building. The Commissioner has adjusted the petitioner's income for each year by reducing the petitioner's business expenses by the above amounts. The petitioner does not contest these adjustments and they are proper, despite the fact that the money was received from the county. If the petitioner had paid the owner of the building the portion of the rent borne by the county and had been paid a like amount by the owner of the building for legal services, the result would be exactly the same. The findings of fact indicate the correct treatment of other items. The determination of the Commissioner has been modified or changed in some minor respects, in several instances by concessions of the respondent's counsel. The petitioner has been given the benefit of every adjustment which the evidence justifies.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

BLACK, ARUNDELL, VAN FOSSAN, and ARNOLD concur only in the result.