Lottie Lobello Clayton v. Commissioner.
Clayton v. Commissioner
Docket Nos. 13592, 15078.
United States Tax Court
1948 Tax Ct. Memo LEXIS 157; 7 T.C.M. (CCH) 377; T.C.M. (RIA) 48112; June 23, 1948
*157 William Andress, Jr., Esq., 301-5 Boulevard Bldg., Dallas, Tex., for the petitioner. D. Louis Bergeron, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in taxes, and fraud penalties, as follows: Docket No.
Year
Tax
Deficiency
Penalty
15078
1942
Income
$1,249.51
$ 624.76
13592
1943
Income and victory
8,665.08
4,532.19
15078
1944
Income
2,645.60
1,322.80
These proceedings were consolidated for hearing. By oral stipulation the respondent has conceded that the petitioner is entitled to a bad debt deduction of $700 for the year 1943. The principal issue for decision with respect to each taxable year is whether the fraud penalties were erroneously determined under section 293 (b) of the Internal Revenue Code. The petitioner also assigns the following as errors: "The failure to forgive three-fourths of the tax due for the year 1942, under the Current Tax Payment Act of 1943, based upon the Commissioner's determination that fraud existed. * * *
"The assessment of a fraud penalty [for 1943] in the amount of $4,532.19, any assessment *158 being erroneous, and the computation of it being improperly based upon the full amount of tax rather than the deficiency." Findings of Fact The petitioner is a resident of Bryan, Texas, where she operated a ladies' ready-to-wear shop as a sole proprietorship. Her tax returns were filed with the collector of internal revenue for the first district of Texas. The petitioner filed an individual income tax return for 1942 on March 27, 1943, and an amended return for the same year on August 1, 1946. The pertinent items in these returns and in respondent's notice of deficiency, are as follows: Statutory
Original return
Amended return
notice
Receipts from business
$23,924.30
$23,924.30
$23,583.77
Merchandise bought for sale
19,421.80
13,946.02
14,297.85 *
Net profit from business
600.09
6,657.43
6,657.43
Income from rents
684.23
341.50
341.50
Total income
1,284.32
6,823.93
Net income
1,074.32
6,775.59
6,950.59
Total tax
102.67
1,287.15
1,352.18
The petitioner filed an individual income and victory tax return for 1943 on March 7, 1944, and an amended return for the same year on August 1, 1946. The *159 pertinent items in these returns and in respondent's notice of deficiency, are as follows: Original
Amended
Statutory
return
return
notice
Receipts from business
$50,146.37
$54,095.03
$53,679.16
Merchandise bought for sale
48,095.10
29,454.88
29,565.35
Net profit from business
1,629.08
23,649.47
23,649.47
Income from rents
1,172.50
(711.92)
(711.92)
Total income (income tax)
2,801.58
21,937.55
Net income (income tax)
2,481.58
21,881.55
22,881.55
Total taxes
214.97 *
8,420.23
9,064.37
The petitioner filed an individual income tax return for 1944 on March 15, 1945, and an amended return for the same year on August 1, 1946. The pertinent items in these returns and in respondent's notice of deficiency, are as follows: Original
Amended
Statutory
return
return
notice
Receipts from business
$39,121.61
$58,100.06
$57,556.64
Merchandise bought for sale
34,377.14
34,955.52
31,377.35 *
Net profit from business
3,091.85
21,443.68
21,371.50
Income from rents
1,077.40
717.24
717.24
Total income
4,169.25
21,275.96 **
24,120.00 **
Net income
Total tax
539.00 ***
2,636.03
3,184.60
*160 As reported in the petitioner's original returns, the cost of merchandise bought for sale was overstated approximately $18,500 for 1943; the total receipts from the petitioner's business were understated approximately $3,500 for 1943, and $18,000 for 1944. Such discrepancies resulted in corresponding understatements of the petitioner's net income for the taxable years 1943 and 1944. The petitioner's amended returns were accompanied by a check for $14,617.86 which was placed in a suspense account by the respondent. The proceeds of the check were applied, during August 1947, in partial satisfaction of the deficiencies upon receipt of waivers to the assessment of agreed portions thereof. The petitioner's original returns were prepared by a neighborhood merchant whose knowledge of bookkeeping was limited, primarily to that acquired in the operation *161 of a seed store. The petitioner, herself, had no knowledge of bookkeeping and has never kept or maintained any books or records except checking account and bank deposit books. The seed store merchant set up a ledger for petitioner's use in 1945. Her formal education ended with the third grade in school. The information used in the preparation of the original returns was furnished by the petitioner from data compiled, in large part, by her niece, who was employed in the petitioner's shop. The petitioner's amended returns were prepared by her attorney. He had been retained on or about May 30, 1946, for the purpose of preparing a delinquent return for 1945, and he was retained on June 5, 1946, to represent the petitioner for the taxable years when it was learned that an investigation of the returns for two of those years had been initiated by the respondent's agents. (The 1942 and 1943 returns were assigned for routine investigation on May 16, 1946; the 1944 return was assigned on June 28, 1946). The discrepancies between the petitioner's original and amended returns for the taxable years were reported to a deputy collector of internal revenue promptly by the petitioner's attorney before *162 they were discovered by the respondent's agents. The petitioner's attorney notified the respondent's agents on or about June 5, 1946, that the petitioner would file amended returns for the taxable years. Sometime after July 11, 1946, and prior to the filing of the amended returns on August 1, 1946, the subject of fraud penalties had been discussed by the petitioner's attorney and the respondent's agents. The respondent's investigation was completed after August 15, 1946. The fraud penalties were formally proposed by letters dated December 9, 1946, and they were imposed for 1943 by notice of deficiency dated March 13, 1947, and for 1942 and 1944 by notice of deficiency dated June 9, 1947. The petitioner bought all merchandise for her shop and she made all of her bank deposits. The total deposits for each taxable year and the bank balances at the beginning and end of each year were as follows: Total
First National Bank
Deposits
Balance
1/1/42
$ 1,274.22
1942
$23,137.16
12/31/42
4,315.17
1943
52,269.69
12/31/43
19,245.09
1944
59,641.86
12/31/44
27,779.34
City National Bank
1944
1,410.62
First State Bank and
Trust Co.
1944
11,408.19
*163 Of the total deposits made during 1944 the sum of approximately $15,500 represents amounts transferred between bank accounts, leaving original deposits of approximately $56,500 for that year. The petitioner was married to Lee LoBello when only sixteen years of age and she divorced him in 1940. She married James C. Clayton in January 1944. In addition to the bank balances shown hereinbefore, the petitioner and her second husband acquired the following property during the taxable years: When
acquired
Property
Cost
1942
War bonds
$ 75.00
Cows and horses
400.00
1943
Bryan Building & Loan Assn.
20 shares of installment stock
payable $20 monthly begin-
ning April 1, 1943
War bonds
806.25
1944
Brick cottage at 307 E. 24th
St.,Bryan, and furniture
6,000.00
War bonds
4,537.50
Buick automobile
2,200.00
(Old car sold for $1,500)
Opinion KERN, Judge: The respondent has the burden of proving fraud, not by a mere preponderance of the evidence, but by clear and convincing proof. See Oscar G. Joseph, 32 B.T.A. 1192, 1205. In the instant case the respondent has proved what was admitted by the petitioner - that the returns *164 filed by the petitioner for the taxable years were false in that they were inaccurate. The respondent has also proved that petitioner was negligent to the extent that her negligence may be described as gross negligence. But, in our opinion, the respondent has failed to prove, by clear and convincing evidence, that petitioner's intent was fraudulent within the meaning of section 293 (b) of the Internal Revenue Code, or section 6 (b) of the Current Tax Payment Act of 1943. The proof shows that petitioner made errors in considerable amounts as to different items appearing in her income tax returns for the taxable years which resulted in substantial understatements of taxable income; that any books and records kept for the business were inadequate; that the person employed by petitioner to assist in the preparation of the returns was incompetent; and that she, herself, was extremely careless. Fraud is a subjective matter; and the question in cases involving fraud is whether the particular taxpayer, acting in the specific factual situation disclosed by the particular record, acted with fraudulent intent. In the instant case the petitioner was a woman who had limited *165 education and whose business experience consisted of running a lady's ready-to-wear shop in a small town. She had one employee who kept what were apparently fragmentary records. Her tax advisor was the proprietor of a seed store. It is evident that during the war years the gross business of her small store increased to a surprising extent. Using the figures shown in the notices of deficiency, the gross receipts increased from $23,583.77 in 1942, to $53,679.16 in 1943, to $57,556.64 in 1944. During this same time the merchandise bought for sale more than doubled. It may reasonably be supposed that, while the rudimentary records kept by petitioner might give an adequate financial picture of her business prior to 1942, they were completely inadequate to reflect accurately the hectic activity which occurred during the war years in the sale of women's clothing in Bryan, Texas. Petitioner is not a person trained in the law or in the intricacies of large businesses. If she were, we might conclude that the large discrepancies between some of the important items in her returns as they actually were and as reported for taxation, plus the increase in her bank account, plus the failing to give *166 some explanation other than negligence for the discrepancies, constituted fraud. See Russell C. Mauch, 35 B.T.A. 617, Aff'd 113 Fed. (2d) 555; Louis Halle, 7 T.C. 245; In re Rea Gano, 19 B.T.A. 518. Similarly, if petitioner had fabricated fictitious loss deductions, our conclusion might have been that this positive evidence of fraudulent intent, coupled with the failure to accurately report her income, would have constituted clear and convincing evidence of fraud. See Frank A. Weinstein, 33 B.T.A. 105. In the case of Louis Halle, supra, at page 251, we said: "The petitioner is not a person who could fail to understand what the law requires of him under the circumstances of this case. He is a lawyer who has practiced his profession for many years. He is experienced not only in the field of law, but also in a business." In the instant case, petitioner is accurately described by her counsel as "circumscribed by the surroundings of her little Texas town, limited by an education that terminated in the third grade, with a marriage at sixteen, ignorant of the intricacies of the income tax law." With regard to *167 such a person, we think that the evidence adduced by respondent would support a finding that petitioner was grossly negligent, but would not warrant a conclusion that she was acting with a fraudulent intent. Decision will be entered under Rule 50. Footnotes
*. Net cost of goods sold.↩
*. Credit of $399.29 is given to statutory notice.↩
*. Net cost of goods sold. ↩
**. Total community income. The original return did not include husband's income; the amended return included $1,596.42 and the statutory notice included $2,031.27 income attributable to husband. ↩
***. The respondent's audit review division found an "error in using table" in connection with this return.↩