WILLIAM R. DIXON and YVONNE DIXON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dixon v. Commissioner
Docket No. 9661-76.
United States Tax Court
T.C. Memo 1979-111; 1979 Tax Ct. Memo LEXIS 414; 38 T.C.M. (CCH) 515; T.C.M. (RIA) 79111; March 27, 1979, Filed *414 (1) The Commissioner recomputed Ps' income for 1972 using the bank deposits method. Such method revealed that Ps had unexplained bank deposits, and based thereon, the Commissioner determined a deficiency. Held, Ps failed to prove that the Commissioner's deficiency determination was incorrect. (2) The Commissioner also determined that Ps' underpayment of tax was caused by negligence or intentional disregard of the rules and regulations for reporting income. Sec. 6653(a), I.R.C. 1954. Held, the Commissioner's determination is sustained. William R. Dixon, pro se. Charles W. Jeglikowski, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $2,652.83 in the petitioners' Federal income tax for 1972 and an addition to tax of $132.64 under section 6653(a) of the Internal Revenue Code of 1954. [1] The issues for decision are: (1) Whether certain bank deposits by the petitioners in 1972 represent unreported income in that year; and (2) whether any part of the underpayment of their tax was due to negligence or intentional disregard of rules and regulations *415 within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, William R. Dixon and Yvonne Dixon, husband and wife, resided in Whittier, Calif., at the time they filed their petition in this case. They filed their joint Federal income tax return for 1972 with the Internal Revenue Service Center, Fresno, Calif. Mr. Dixon will sometimes be referred to as the petitioner. In the latter part of 1971, the petitioner moved to California. He began to attend a junior college there and was a full-time student through June 1972. Prior to moving to California, the petitioner worked for Trans World Airlines (TWA) as a ground service agent in Louisville, Ky. From January 1972 to June 1972, he used the severance pay from TWA to support himself. In the early part of 1972, the petitioner agreed with his brother, Joseph D. Dixon, that he would work in his brother's gambling business for 25 percent of the net proceeds of the business. In June 1972, the petitioner commenced such work by answering *416 telephones and doing other things his brother requested. However, the Federal Government terminated the operation of such business in November 1972 and confiscated its money and records. On February 4, 1974, the petitioner pled guilty to, and was convicted of, the offense of conducting a gambling business "which gambling business had gross revenue in excess of $2,000.00 on October 21, 1972, and other days * * *." Also, on February 4, 1974, Joseph Dixon pled guilty to, and was convicted of, the offense of failing to "disclose or reflect substantial amounts of money received by him in connection with his operation of a gambling business" on his Federal income tax return for 1970. Joseph Dixon was also assessed additional taxes arising from income from his gambling operation in 1972. On or about June 8, 1972, the petitioners opened checking account number XX-XXX8-890 at the Los Nietos branch of the Golden State Bank of California (Golden State Bank). The following deposits were made to this account by the petitioners during 1972: Date
Amount
June 8 $ 151.75
June 8
300.00
June 21
500.00
July 12
500.00
July 18
80.64
Aug. 2
736.00
Aug. 7
400.00
Aug. 15
60.00
Aug. 16
500.00
Aug. 28
200.00
Aug. 30
250.00
Sept. 18
500.00
Sept. 26
17.26
Oct. 3
400.00
Oct. 5
646.00
Oct. 13
100.00
Oct. 16
450.00
Oct. 23
500.00
Oct. 27
250.00
Oct. 30
232.00
Oct. 31
140.00
Nov. 1
3,200.00
Nov. 10
280.00
Nov. 20
266.00
Nov. 30
519.83
Total
$11,179.48
*417 On or about December 1, 1972, the petitioners also opened checking account number XX-XX5-060 at the Los Nietos branch of the Golden State Bank and made a deposit of $50.00 in that account on that date. On June 9, 1972, the petitioner submitted an application to the Golden State Bank for an installment loan to purchase a 1972 Cadillac Eldorado. On the application, his occupation was lited as a self-employed builder-developer, and his annual salary was listed as $20,000.00. On their Federal income tax return for 1972, the petitioner listed his occupation as "student," and his wife listed her occupation as "beautician." They reported gross income of $2,627.40, attributable solely to Mrs. Dixon's earnings as a beautician. In his notice of deficiency, the Commissioner determined that all deposits made in both their accounts at the Golden State Bank represented income to the petitioners in 1972, and he increased their income by this amount. [2] He also imposed a 5-percent addition to the tax under section 6653(a) due to negligence and intentional disregard of rules and regulations. *418 OPINION The first issue for decision is whether the deposits made by the petitioner in their accounts at the Golden State Bank during 1972 represent income to them in that year. The use of the bank deposits method of computing income has long been sanctioned by the courts as a method of reconstructing income. See, e.g., Goe v. Commissioner,198 F. 2d 851 (3d Cir. 1952), affg. a Memorandum Opinion of this Court, cert. denied 344 U.S. 897 (1952); Halle v. Commissioner,175 F. 2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946), cert. denied 338 U.S. 949 (1950); Mauch v. Commissioner,113 F. 2d 555 (3d Cir. 1940), affg. 35 B.T.A. 617 (1937); Oliver v. United States,54 F. 2d 48 (7th Cir. 1931), cert. denied 285 U.S. 543 (1932). It is a well established principle that the Commissioner's deficiency determination is presumptively correct and that the petitioner has the burden of proving otherwise. Rule 142, Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). A deficiency determination based on the bank *419 deposits method of reconstructing income is entitled to such presumption, and the petitioner bears the burden of proving that such determination is incorrect. Armes v. Commissioner,448 F. 2d 972 (5th Cir. 1971), revg. on other issues a Memorandum Opinion of this Court; Estate of Mason v. Commissioner,64 T.C. 651, 656-657 (1975), affd. 566 F. 2d 2 (6th Cir. 1977); Jones v. Commissioner,29 T.C. 601 (1957). The petitioner contends that the deposits in the Golden State Bank during 1972 represent loans from his brother, Joseph Dixon, and therefore, do not constitute income to him during that year. The petitioner testified that during 1972, his brother lent him money as he needed it to pay his bills and to provide him with needed funds. He maintains that his brother gave him the amounts in cash and that he deposited the money in these accounts. He claims that he repaid his brother for such loans when he secured a loan in the amount of $11,590 from the Golden State Bank on December 16, 1977, and used the money to repay the loans from his brother. The petitioner stated that he never signed a written agreement to repay *420 the loans from his brother because he and his brother are very close, and in their opinion, it was unnecessary. The petitioner also argues that he received no proceeds from the gambling business because the Federal Government seized all the money and records of the business. In his brief, he also maintains that his brother did not claim a deduction for any compensation paid to him and that the failure to claim such deduction is additional evidence that no compensation was paid to him; but there is no evidence in the record as to whether the brother did, in fact, claim a deduction for such payments. After careful consideration of all the evidence, we must reject the petitioner's contentions. A telling factor is that the months during which the deposits were made correspond to the months when the petitioner was involved in his brother's gambling business. The deposits began in early June and ended in December of 1972, and the petitioner admitted that he was involved in the business during these months. Furthermore, the deposits were in varying amounts, and often there were multiple deposits on the same day or a few days apart. Thus, the timing and pattern of the deposits strongly *421 suggest that they were his share of the proceeds of the business, and not loans. Also, we cannot accept the petitioner's statement that he received none of the proceeds of the business because the Federal Government confiscated all the moeny and records of the business. It is highly unlikely that all the proceeds of the gambling operation during June to October were still at the business when the Government seized them; more likely, only the most recent receipts of the business were there to be seized. Moreover, the petitioner's brother admitted that he was assessed with additional taxes arising from his gambling operation in 1972. Also, the petitioner pled guilty to the offense of conducting a gambling business, "which gambling business had gross revenue in excess of $2,000.00 on October 21, 1972, and other days * * *." Hence, both the petitioner and his brother have, in effect, admitted that the business produced revenue, and we cannot believe that there was no division of the revenue as it was earned. We are also not persuaded by the petitioner's attempt to substantiate his position by paying his brother the amount he allegedly borrowed in 1972. Such payment took place *422 after this case was called from the calendar of the trial session and scheduled for trial, but before the trial actually occurred. Under such circumstances, it is clear that the payment was arranged solely for the purpose of supporting the petitioner's position in this case, and for that reason, such evidence carries little weight. Finally, the petitioner's inconsistent and contradictory statements concerning his occupation and income on his 1972 tax return and on his application for an installment loan to the Golden State Bank cast further doubt upon his credibility. He claimed he did not fill out the application and that he could only varify his signature on the bottom of it. Yet, he assumed responsibility for the accuracy of the information on the application when he signed it. Such inconsistencies in the petitioner's testimony and blatant misrepresentations on other matters lead us to place little weight on his contentions. Accordingly, we conclude that the petitioner has failed to carry his burden of proving the Commissioner's determination to be incorrect, and we therefore sustain the deficiency determined by the Commissioner with respect to the $11,229.48 of bank deposits.
*423 The final issue for decision is whether the petitioner's underpayment of tax for 1972 was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). [3] The petitioner also has the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757 (1972); Inter-American Life Insurance Co. v. Commissioner,56 T.C. 497 (1971), affd. per curiam 469 F. 2d 697 (9th Cir. 1972); Rosano v. Commissioner,46 T.C. 681 (1966). The petitioner presented no evidence on this issue other than his general statements at trial that neither he nor his brother kept a record of the loans because they were very close and did not need such records. He also made an alternative argument that any records they did keep were destroyed when the Government confiscated the records of the gambling business. We have already rejected the petitioner's contentions that the deposits were loans from his brother, and his alternative argument must be rejected on the same grounds. Since the petitioner has introduced no other evidence to explain his failure to report his income, we accordingly sustain the Commissioner's *424 imposition of the addition to the tax under section 6653(a). Due to a concession by the Commissioner, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩
2. In the notice of deficiency, the Commissioner asserted that $11,590 represented the sum of all deposits made into the petitioners' accounts at the Golden State Bank. At trial, the Commissioner's counsel stated that certain deposits which were made in 1973 were erroneously included in the statutory notice. Accordingly, he conceded that $11,229.48 is the correct amount of deposits made into the petitioners' accounts during 1972.↩
3. In relevant part, sec. 6653(a) provides: If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩