SHERMAN FLAKE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; KAREN FLAKE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Flake v. Commissioner
Docket Nos. 20541-82, 20542-82. [1]
United States Tax Court
T.C. Memo 1984-647; 1984 Tax Ct. Memo LEXIS 27; 49 T.C.M. (CCH) 300; T.C.M. (RIA) 84647; December 13, 1984. Sherman K. Flake and Karen Flake, pro se. James J. Everett, for the respondent. SHIELDS MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Docket No.
Year
Deficiency
Sec. 6653(b)
Sec. 6654(a) [2]
20451-82
1971
$3,194
$1,597
$102
1972
5,938
2,969
190
1973
8,733
4,367
279
1974
3,386
1,693
108
1975
6,550
3,275
276
20452-82
1971
$2,609
$1,305
$ 83
1972
5,263
2,632
168
1973
7,869
3,935
251
1974
2,342
1,171
75
1975
5,436
2,718
229
*29 As an alternative to the additions to tax under section 6653(b) respondent in his answer asserted additions to tax under section 6651(a)(1) and additions to tax under section 6653(a) for all years. The issues for decision are: (1) whether petitioners received taxable income for the years 1971 through 1975 as determined by respondent; (2) whether petitioners are liable for additions to tax under section 6654; (3) whether petitioners are liable for additions to tax under section 6653(b); or (4) in the alternative to (3), whether petitioners are liable for the additions to tax under sections 6651(a)(1) and 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and exhibits attached thereto are incorporated herein by reference. During all of the years under consideration and at the time their petitions were filed, Sherman K. Flake and Karen Flake, resided in Maricopa County, Arizona, a community property *30 state. At the time of the trial Mr. Flake was 49 years of age. He attended public schools through the 12th grade and attended trade schools for four years learning how to make and install cabinets and countertops. He is an experienced carpenter. He has had some college courses primarily in aviation since flying is his hobby. During the years 1971 through 1975 he worked full time installing cabinets and countertops. Part of the time he was a self employed contractor or subcontractor, but at times he was employed by others. During such years, Mrs. Flake was unemployed and had no separate income but one-half of the income earned by Mr. Flake during these years is attributable to her under the community property laws of Arizona. At the date of trial, Mrs. Flake was 46 years old. She is a graduate of Arizona State University with a degree in education. While in college she took courses in accounting and knows how to determine profit and loss and how to prepare income tax returns. Together with her husband, she prepared and filed valid, acceptable and timely joint income tax returns for the years 1968 and 1970. After the 1970 return was filed in April of 1971, petitioners made *31 no attempt to file any further income tax returns until April 18, 1975 when Forms 1040 for each of the years 1971 through 1974 were received by respondent from petitioners. These forms were prepared by Mrs. Flake in the presence of and after consultation with Mr. Flake. Each Form 1040 indicated a joint filing status but contained only Mr. Flake's name, address, social security number and signature. On the line for wages on each form "(not over) 21" was inserted with an asterisk to a footnote which stated, "This figure is expressed in Constitutional Dollars of silver and/or gold." On all other lines on the Forms 1040 the word "none" or asterisks appeared. The asterisks apparently referred to constitutional objections and arguments set out in attachments to the forms. The first page of each Form 1040 also bore a handwritten statement offering to amend the documents "* * * if you can show me how to do so without waiving my constitutional rights." By letter dated May 27, 1975, respondent advised Mr. Flake that the Forms 1040 filed for the taxable years 1971 though 1974 were "not acceptable" as income tax returns because they did not contain information required by sections *32 6011 and 6012. Mr. Flake acknowledged receipt of respondent's letter in correspondence dated June 5, 1975. The acknowledgement also contained additional constitutional arguments. On or about July 20, 1976, petitioners filed an additional Form 1040 for each of the taxable years 1972 through 1975. These documents were similar in most respects to the forms filed by petitioners in April of 1975. They each contained constitutional objections and were signed by Mr. Flake. The word "none" or asterisks referring to attached arguments appeared on almost every line of each form including the line for wages. This set of documents also contained a statement that the signature was "involuntarily given under threat of statutory punishment." At the same time, a Form 1040 was filed for the taxable year 1975. It contained similar entries and constitutional objections and references with one exception. The phrase "under 740.00" appeared on the lines for wages and total income, and the numeral zero appeared next to the asterisks on many of the other lines. On or about April 17, 1978 petitioners again filed a Form 1040 for each of the taxable years 1971 through 1975. These purported *33 to be amended returns but contained the word "none" or "Object Self-Incrimination" on every relevant line of each form. Twelve pages of constitutional arguments were also attached to each Form 1040. Needless to say the various documents filed by petitioners for the taxable years 1971 through 1975 did not contain sufficient information for a determination of their income tax liability for any one of such years. On or about September 11, 1974, petitioners filed two documents with the Recorder's Office of Maricopa County, Arizona. One document is entitled "Declaration of S and K Flake Children's Trust." In it petitioners declared that certain real property which they owned was being held thereafter in trust for their minor children. The other document is a "Bill of Sale" by which petitioners conveyed certain personal property to Lowry Flake, Mr. Flake's brother, for ten dollars. The personal property included a house trailer, a trailer tank, a Dilly boat trailer, a Starcraft 18-foot boat and a Piper Tri-pacer airplane. On or about February 6, 1975, Mr. Flake prepared and signed a Form W-4E with one of his employers. This form contained the following language: Under *34 penalties of perjury, I certify that I incurred no liability for Federal income tax for 1975 and that I anticipate that I will incur no liability for Federal income tax for 1976. In a 1971 application for bank credit, Mrs. Flake represented that Mr. Flake had a net monthly income of $1,125.00 or a net annual income of $13,500.00. A similar application was made by Mrs. Flake to the Valley National Bank in 1972 which indicated that Mr. Flake had a net annual income from business of $16,800. Petitioners refused to cooperate with respondent's agents in the determination of their correct taxable income for 1971 through 1975. The agents determined the taxable income from an analysis of the joint checking account which petitioners maintained at the Valley National Bank. The detail with respect to the account was obtained from the bank with an administrative summons. The summons was enforced by the local district court over the objections of petitioners. The analysis of the checking account started with a complete list of all deposits made to the account between January 1, 1971 through December 30, 1975. The agents then attempted to identify the source of each deposit. They were *35 unable to do so with respect to all of the deposits made during the first ten months of 1971 but thereafter the source of most of the deposits appeared on the deposit slips. The sources most often identified were firms with which Mr. Flake did business such as Classic Woodcraft and Gillespie Homes. Occasionally, however, a nontaxable source such as the proceeds of a loan or an advance on a credit card would appear. The deposit slips also frequently contained a notation that a portion of the check being deposited was being withdrawn or withheld in cash. These items were noted by the agents and accumulated under the heading "cash outs." After identifying the source of as many of the deposits as possible, respondent's agents determined the gross income of petitioners by (1) reducing the total deposits in each year by the amount of the deposits for the year identified as being from nontaxable sources and (2) adding back the total "cash outs" for the year. One half of the gross income determined in the above manner for each year was then attributed to each petitioner in accordance with the community property laws of Arizona. The taxable income of each petitioner for each *36 year was then arrived at by reducing his or her gross income by the standard deduction and the personal exemption applicable for that year. At trial petitioners refused to produce any evidence as to the correct amount of their income and deductions for any of the years 1971 through 1975. Instead both at trial and on brief they elected to repeat the time-worn, vague, and groundless arguments that (a) wages are not income; (b) neither petitioner was an employee within the meaning of section 3401(c); (c) to require them to file proper returns and to bear the burden of proof with respect to the deficiencies would violate their rights under the Fifth Amendment; and (d) respondent's deficiency notice is without basis and therefore is invalid. OPINION (1) Deficiencies
The arguments made by petitioners with respect to the deficiencies are so groundless and have been duly considered by this Court and others so many times that lengthy consideration is not necessary. Suffice it to say that: (a) Wages are income and their taxation is clearly constitutional. Rowlee v. Commissioner,80 T.C. 1111 (1983), appeal dismissed (2d Cir. April 3, 1984); Eisner v. Macomber,252 U.S. 189 (1920); *37 Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955); Funk v. Commissioner,687 F.2d 264 (9th Cir. 1982), affg. T.C. Memo. 1981-506. (b) The definition of employee as found in section 3401(c) has no application to petitioners in this case. See secs. 1, 6001, 6011, 6012; United States v. Moore,692 F.2d 95 (10th Cir. 1979, as amended, Oct. 26, 1982); United States v. Slater,545 F. Supp. 179 (D. Del. 1982); Rowlee v. Commissioner,supra.
(c) Petitioners' attempt to avoid their burden of proof with respect to the deficiencies by relying upon the Fifth Amendment is based upon their claim that they are the subject of an ongoing criminal investigation by respondent. The record contains no evidence of such an investigation and the Court is satisfied that petitioners do not have a reasonable basis to fear self-incrimination. In other words the possible danger, if any, of self-incrimination is so remote and so speculative that it cannot serve as the basis for a Fifth Amendment claim in this case. See Burns v. Commissioner,76 T.C. 706 (1981); Wilkinson v. Commissioner,71 T.C. 633, 638 (1979); *38 Ryan v. Commissioner,67 T.C. 212, 217 (1976), affd. 568 F.2d 531, 539 (7th Cir. 1977), cert. denied 439 U.S. 820 (1978); Roberts v. Commissioner,62 T.C. 834, 838 (1974). (d) Respondent determined the deficiencies by analyzing the bank deposits made by petitioners. The analysis of bank deposits has long been an accepted method of proving income where the taxpayer fails or refuses, as in this case, to produce any books or records. Goe v. Commissioner,198 F.2d 851 (3d Cir. 1952), affg. a Memorandum Opinion of this Court; Halle v. Commissioner,175 F.2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946); Hague Estate v. Commissioner,132 F.2d 775 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); Mauch v. Commissioner,113 F.2d 555 (3d Cir. 1940), affg. 35 B.T.A. 617 (1937); Nicholas v. Commissioner,70 T.C. 1057 (1978); Estate of Mason v. Commissioner,64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Petitioners have not challenged the method used by respondent or produced *39 evidence as to any deduction, exclusion, or credit they may be entitled to which has not been included in the computation. We have no basis, therefore, on which to determine that petitioners owe any lesser deficiency for any year than that determined by respondent. We conclude therefore that the deficiencies as determined by respondent are correct. (2) Additions to Tax Under Section 6654
Petitioners have the burden of proving error in respondent's determination that additions to tax should be imposed under section 6654(a). Hollman v. Commissioner,38 T.C. 251, 263 (1962). The record contains no evidence that respondent so erred. His determination is sustained on this issue. (3) Additions to Tax Under Section 6653(b)
Respondent has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year was due to fraud. Section 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. Commissioner,398 F.2d 1002, 1004 (3d Cir.1968); *40 Webb v. United States,394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. The presence or absence of fraud is a question of fact to be determined from the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without pub. opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed but must be established by affirmative evidence. Beaver v. Commissioner,55 T.C. 85 (1970). It may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. His entire course of conduct may be examined to determine whether the fraudulent intent is present. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). The mere failure to file a return, without more, is not proof of fraud. It may be considered, however, together with other facts in determining whether there is fraud. Beaver v. Commissioner,supra;Acker v. Commissioner,26 T.C. 107 (1956). In this case the following facts are not disputed: (1) Both *41 petitioners are reasonably intelligent and are well educated, Mrs. Flake through college and Mr. Flake through high school and trade school. (2) During each of the years 1971 through 1975 they were aware that they each had income in sufficient amounts to require the filing of proper income tax returns. (3) They knew how to prepare and file income tax returns because they had prepared and filed proper tax returns for previous years. (4) For each of the years 1971, 1972, 1973, and 1974 they made no attempt to file any return until April 18, 1975. At that time they filed a Form 1040 containing various constitutional arguments for each of these years in the name of Mr. Flake. At the time these Forms 1040 were filed both petitioners knew that such forms were incorrect in that they did not contain sufficient information from which their correct taxable income could be determined. (5) In May of 1975, respondent advised petitioners by letter that the forms filed by them for 1971 through 1974 did not constitute acceptable returns.Nevertheless in July of 1976 petitioners again filed similar forms for 1972 through 1975 and again in April of 1978 they filed similar amended *42 forms for 1971 through 1975. (6) Petitioners refused to produce for respondent's examination any books or records reflecting their income for the disputed years and attempted unsuccessfully to "squelch" the administrative summons issued by respondent to obtain the necessary information from a third party. From the above, the conclusion is inescapable that petitioners knew they were required to file returns for 1971, 1972, 1973, 1974, and 1975; that they deliberately failed to do so; that in April of 1975 they untimely filed Forms 1040 for 1971 through 1974 which they knew were not correct and from which their income could not be determined; and that they persisted in filing incorrect and untimely Forms 1040 for 1971 through 1975 after they had been advised that their constitutional arguments had been rejected by the courts and that the forms did not constitute income tax returns. Even if we assume that at least in the beginning they sincerely believed that they had the right to question the validity of the tax laws this freedom of expression did not include the right to defraud the United States. See United States v. Moore,627 F.2d 830 (7th Cir. 1980) and Rowlee v. Commissioner,supra. *43 In addition to the above, petitioners cannot place themselves within the factual situation found in Raley v. Commissioner,676 F.2d 980, 983 (3rd Cir. 1982), where the taxpayer "went out of his way to inform every person involved in the collection process that he was not going to pay any federal income taxes." Hebrank v. Commissioner,81 T.C. 640, 643 (1983). In contrast to Raley, petitioners in this case did not voice their constitutional objections to respondent or his agents until April 18, 1975 by which time they were already delinquent on their returns for 1971 through 1974, had placed their real property in trust for their minor children and had transferred for an inadequate consideration substantial personal property to Mr. Flake's brother. Furthermore, Mr. Flake had already filed a false Form W-4E with his employer. From the record as a whole, the ultimate conclusion is also inescapable that the use of the protestor type of forms was just another step in the deliberate plan of petitioners to conceal, mislead, and otherwise prevent the assessment and collection of the taxes which they knew were due from them for each of *44 the years 1971 through 1975. See Grosshandler v. Commissioner,75 T.C. 1 (1980); Rowlee v. Commissioner,supra.[3] We find, therefore, that respondent has established with clear and convincing evidence that petitioners fraudulently failed to report and pay the income taxes due from them for the years 1971 through 1975. The addition to tax under section 6653(b) for each year is sustained against each petitioner. [4]
(4) Additions to Tax Under Sections 6651(a)(1) and 6653(a)
In view of our finding above with respect to the addition to tax under section 6653(b) we need not consider respondent's alternative position with respect to the additions under section 6651(a)(1) *45 and 6653(a). Decisions will be entered for the respondent.
Footnotes
1. On motion of Respondent, these cases were consolidated for trial, briefing, and opinion.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. See also Fuhrmann v. Commissioner,T.C. Memo. 1982-255 and Dailey v. Commissioner,T.C. Memo. 1984-89↩.
4. On brief petitioners belatedly argued that the assessment of the deficiencies and additions to tax is barred by the statute of limitations. However, in view of our findings with respect to fraud and the fact that no returns were filed the assessments can be made at anytime. Section 6501(c)(1) and (3).↩