CYRUS KAVOOSI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kavoosi v. Commissioner
Docket No. 34350-83.
United States Tax Court
T.C. Memo 1986-190; 1986 Tax Ct. Memo LEXIS 417; 51 T.C.M. (CCH) 993; T.C.M. (RIA) 86190; May 12, 1986. *417 Using the bank deposits method, respondent determined that petitioner had unreported taxable income during the years in issue. The amount of income determined by respondent included substantial amounts of funds sent to petitioner from Iran. At trial, petitioner's motion to seal the record to protect the safety of the transferor of the funds was granted. Held: The amounts received by petitioner from Iran were gifts excludible from gross income under sec. 102(a), I.R.C. 1954. Held, further, Petitioner has established that he had no unreported taxable income for 1978. Held,further, Petitioner has failed to show that amounts in excess of funds received from Iran during 1977, 1979 and 1980 did not constitute taxable income. Held,further, Petitioner is liable for the addition to tax under sec. 6653(a) for 1977, 1979 and 1980. Held,further, The six year limitations period of sec. 6501(e)(1)(A) is inapplicable, and thus, the assessment and collection of tax for 1977 are barred by the statute of limitations. Sec. 6501(a). Martin A. Schainbaum and Kathleen A. Miller, for the petitioner. Gerald J. Beaudoin, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: *418 Respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Sec. 6653(a) [1]
Year
Deficiency
Addition to tax
1977
$89,841
$4,492
1978
38,750
1,938
1979
40,009
2,000
1980
10,149
507
After concessions, the issues are (1) whether petitioner received unreported taxable income during the years in issue in the amounts determined by respondent, (2) whether petitioner is liable for the addition to tax under section 6653(a) for each of the years in issue and (3) in the event we determine that petitioner received unreported taxable income for 1977 or 1978, whether the assessment and collection of tax for such years is barred by the statute of limitations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner, Cyrus Kavoosi (herein, "petitioner"), resided in Capitola, Calif. when he filed his petition herein. Petitioner was born in Iran in 1939. He left that country in 1963 and has resided since that time in the United States. From 1963 to the *419 present, petitioner has worked at a variety of jobs in the restaurant industry, including bus boy, dish washer, waiter, bartender, bar manager and restaurant manager. During each of the years in issue, petitioner owned various rental properties. Furthermore, during 1979 and 1980, he participated in a joint venture involving a Chinese restaurant called "Chef Tong." In December 1976, petitioner's parents came to reside permanently in the United States. At that time, petitioner's mother was suffering from a heart condition. Petitioner uses the calendar year as his taxable year and filed Federal income tax returns for each of the years in issue. His return for 1977 was filed on or about May 22, 1978. Therein, he reported wages of $3,900, interest income of $2,136, gross rental income of $22,380 and, after deductions for depreciation and expenses with respect to rental property, a net rental loss of $2,738.67. Petitioner reported taxable income of $3,297.33 and indicated his Federal income tax liability for 1977 to be $11.00. Petitioner timely filed his Federal income tax return for 1978 on or about October 15, 1979. For that year, he reported wages of $11,050, interest income of *420 $2,525, gross rental income of $37,200 and, after deductions for depreciation and relevant expenses, net rental income of $10,599. Petitioner reported taxable income of $16,499 and indicated liability for Federal income tax for 1978 in the amount of $2,878. On or about October 15, 1980, petitioner timely filed his Federal income tax return for 1979. Therein, petitioner reported no wage income, but showed interest income of $3,341, gross rental income of $52,800 and, after deductions for depreciation and relevant expenses, net rental income of $27,508. Petitioner also reported as income $2,428, representing his share of income from the Chef Tong restaurant joint venture. He showed taxable income of $24,828 and Federal income tax liability of $4,487 for 1979. [2] Petitioner filed his 1980 Federal income tax return on or about June 16, 1982. Therein, he showed no income from wages, but reported interest income in the amount of $5,774, gross rental income of $66,575 and, after deductions for depreciation and relevant expenses, net rental income of $13,333. In addition, petitioner *421 showed a loss of $31,967 from the Chef Tong restaurant joint venture. Petitioner reported "other income," including proceeds of certain disability insurance, totaling $24,600. In sum, petitioner reported taxable income of $2,527 and indicated that he had no Federal income tax liability for 1980. During each of the years in issue, petitioner received various transfers of funds from Iran, as indicated by the following table: Total amount of funds
Year
received from Iran
1977
$137,200.00
1978
89,980.00
1979
54,280.50
1980
1,795.42
Petitioner maintained a savings account (No. 2-04077) at the Bank of America and a savings account (No. 5-227456-0) at World Savings and Loan Association during each of the years in issue. From 1978 through 1980, petitioner also maintained a checking account (No. 8-06433) at the Bank of America. During 1977 and 1978, petitioner made total deposits to these accounts of $181,495.62 and $123,442.89, respectively. In 1979 and 1980, petitioner's total deposits to these accounts were $120,228.28 and $301,719.88, respectively. [3] The funds transferred from Iran were deposited to petitioner's bank accounts during the years in issue and thus, are included among these deposits. *422 [4] On September 14, 1983, respondent issued a notice of deficiency in which he determined that certain of petitioner's bank deposits, including the funds from Iran, constituted unreported taxable income during the years in issue, as reflected by the following table: Amount of deposits determined
Total Amount
by respondent to constitute
Year
of Bank deposits
unreported taxable income
1977
$181,495.62
$151,006
1978
123,442.89
64,668
1979
120,228.28
58,911
1980
301,719.88
34,094 Respondent has conceded that an additional $4,217.97 of the deposits made during 1980 is attributable to non-taxable sources. He thus asserts herein that, during 1980, *423 petitioner received unreported taxable income of $29,876.03, rather than $34,094. OPINION The first issue is whether petitioner received unreported taxable income during the years in issue in the amounts determined by respondent. Respondent's determination is based upon deposits made to petitioner's bank accounts during the years in issue. The use of the bank deposits method of computing income has long been sanctioned by the courts as a method of reconstructing income. See, e.g., Goe v. Commissioner,198 F.2d 851 (3d Cir. 1952), affg. a Memorandum Opinion of this Court, cert. denied 344 U.S. 897 (1952); Halle v. Commissioner,175 F.2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946), cert. denied 388 U.S. 949 (1950); Mauch v. Commissioner,113 F.2d 555 (3d Cir. 1940), affg. 35 B.T.A. 617 (1937); Oliver v. United States,54 F.2d 48 (7th Cir. 1931), cert. denied 285 U.S. 543 (1932). Respondent's deficiency determination is presumptively correct and petitioner has the burden of proving otherwise. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). A deficiency determination based on the bank deposits method of reconstructing income is entitled to such presumption, and petitioner bears *424 the burden of proving that such determination is incorrect. Armes v. Commissioner,448 F.2d 972 (5th Cir. 1971), revg. on other issues a Memorandum Opinion of this Court; Estate of Mason v. Commissioner,64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Jones v. Commissioner,29 T.C. 601 (1957). Petitioner does not contend that respondent's use of the bank deposits method to determine his taxable income for the years in issue was improper. Rather, the essence of his position lies in the fact that the amounts determined by respondent to constitute unreported taxable income include funds received by petitioner from Iran. Petitioner contends that the funds received from Iran were gifts and, as such, were excludible from gross income. Respondent recognizes that the amount of unreported taxable income determined by him includes the funds received by petitioner from Iran, but he asserts that such funds were not gifts. Resolution of this issue thus requires a determination of whether the funds transferred from Iran were gifts to petitioner. Section 61(a) provides generally that gross income includes all income from whatever source derived. However, an exception to this rule *425 is contained in section 102(a), which provides that gross income does not include the value of property acquired by gift. Whether an item constitutes gross income under section 61(a) or a gift under section 102(a) is essentially a question of fact to be resolved by the trier of the facts. The Supreme Court has stated that a gift, in the statutory sense, "proceeds from a 'detached and disinterested generosity,' * * * 'out of affection, charity or like impulses'." Commissioner v. Duberstein,363 U.S. 278, 285 (1960). In this regard, the most critical consideration is the intention of the transferor in making the payment. The issue is primarily one of fact, and its resolution "must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case." See Commissioner v. Duberstein,supra at 285-286, 289. After considering the record before us, we are persuaded that the amounts received by petitioner from Iran were indeed gifts. Petitioner testified that the funds from Iran had been sent to him by a wealthy individual in that country (herein, referred to as "X"). [5] *427 He indicated that X had much *426 affection for him and wanted him to have funds to support himself and care for his parents, both of whom had recently arrived in this country, and one of whom was in ill health. Petitioner testified that he used the funds to help support his parents and other members of his family living in the United States. He testified that X did not expect any repayment of the funds. He stated that there was no understanding that interest would be paid on the transferred funds and, in fact, none was paid. Petitioner further testified that these funds did not represent compensation for services, nor were they attributable to any business interest held by him. Petitioner consistently maintained that the funds were a gift. Although X was in Iran and thus unavailable to testify at the time of trial, X's deposition was taken prior to trial by order of the Court pursuant to Rule 81(a). Counsel for respondent was present at the taking of such deposition, and availed himself of the opportunity to cross-examine X.The deposition was introduced into the record as an exhibit to the stipulation of facts. X's testimony on deposition supports the testimony given by petitioner at trial. The substance of X's testimony was that: (1) X is a well-educated individual who possesses substantial wealth; (2) X felt a great deal of affection for petitioner, was aware of his personal and family situation, and accordingly, sent him the funds in question to support himself and to care for his parents; (3) there was no understanding that petitioner would repay the transferred funds, pay interest thereon, or use such funds to purchase properties or otherwise transact business on behalf of X; and (4) the funds were not sent to petitioner as compensation or in connection with any business interest held by petitioner, but rather were intended *428 simply as a gift. On brief, respondent attempts to discredit the testimony of both X and petitioner. He attaches significance to the fact that X could not recall the precise amounts sent to petitioner during the years in issue. However, X testified on deposition that, since the amounts transfered to petitioner were small in relation to X's net worth and were intended as outright transfers of funds with no expectation of repayment, X was not concerned with keeping a detailed account of the specific amounts. X also indicated that it was difficult to recall specific amounts for the years in question due to differences between the United States and Iranian calendars. In addition, it is reasonable to think that exactitude in determining amounts is further complicated where, as appears to be the case herein, the amounts in question involve the conversion of funds from foreign to United States currency. X's lack of precision concerning the amounts sent to petitioner is understandable in view of the circumstances here present, and we thus find no merit in respondent's efforts to discredit X's testimony. Similarly, we are unpersuaded by respondent's attempts to cast doubt upon petitioner's *429 credibility. We had the opportunity to closely observe petitioner's demeanor at trial and found him to be a forthright and credible witness. Thus, we accept and accord proper weight to petitioner's testimony. While respondent does not dispute that the transfers of funds in question originated in Iran, he emphasizes the failure of petitioner to present documentary evidence, particularly bank records, to establish that X was the person who sent such funds. [6] It is true, as respondent points out on brief, that "the failure of a party to introduce evidence within his possession which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). From the record, however, we do not consider this principle to be applicable herein, since it does not appear that the bank records which respondent would have petitioner introduce are in petitioner's possession or are in any meaningful sense available to him. First, it is questionable whether any such records are presently in existence. X's testimony indicated that, in the wake of political *430 and social unrest occurring at the time of the Iranian revolution in 1979, a number of banks were destroyed together with their records. Moreover, X also testified that, with the entrenchment of the Khomeini regime, the sending of funds from Iran, especially to the United States, became increasingly difficult and was met with disfavor by the Iranian government. Accordingly X testified to having disposed of all personal copies of relevant bank records for fear of possible reprisals. Lastly, both petitioner and X testified that, since the transfers of funds were disapproved of by the Iranian authorities, current inquiries concerning any existing records might arouse suspicion and subject X to reprisals at the hands of the Iranian government. We are well aware and take judicial notice of the political events occurring in Iran both during the years in issue and presently. In view thereof, we consider the testimony of petitioner and X on this matter to be credible, and we conclude that the absence of documentary evidence herein in the form of bank records showing that X made the transfers in question is adequately explained. Thus, the fact that petitioner did not introduce such evidence *431 is not, under the particular circumstances here present, fatal to his case. Based upon the evidence in the record, particularly the testimony of petitioner and the deposition of X, we conclude that the funds received by petitioner from Iran were sent by X. [7] *432 *433 Further, we find that the transfers of such amounts were attributable to X's "detached and disinterested generosity" and were motivated by "affection, charity or like impulses." Commissioner v. Duberstein,supra. Accordingly, we hold that the amounts received by petitioner from Iran during the years in issue were gifts, and are therefore excludible from gross income by reason of section 102(a). Having decided that the amounts received by petitioner from Iran during the years in issue are excludible from gross income as gifts, we now apply our conclusion to the facts of this case. As the following table indicates, there are discrepancies between the amount of unreported taxable income determined by respondent, and the amount of funds received by petitioner from Iran during the years in issue. 1977
1978
1979
1980
Unreported income as
determined by respondent
$151,006
$64,668 $58,911.00
[8] $29,876.03
Less: Amount received by
petitioner from Iran
137,200
89,980 54,280.50
1,795.42
Difference:
13,806
[9] *434 (25.312)
4,630.50
28,080.61
As to 1978, petitioner has established that the amount which respondent determined to be unreported income is more than accounted for in its entirety by funds from Iran.Consequently, we find that petitioner has satisfied his burden of proving that he had no unreported taxable income for 1978. As to 1977, 1979 and 1980, however, petitioner has failed to identify or account for the respective amounts of $13,806, $4,630.50 and $28,080.61. Petitioner has offered no explanation nor has he introduced any evidence to show that these amounts do not constitute taxable income. As to such amounts, petitioner has failed to satisfy his burden of proof, and thus, respondent's determination must be sustained to this extent. The second issue is whether petitioner is liable for the addition to tax under section 6653(a) for any of the years in issue. That section provides for an addition to tax in an amount equal to 5 percent of the underpayment if any part thereof is due to negligence or intentional disregard of rules and regulations. Petitioner bears the burden *435 of proof with respect to this issue. Enoch v. Commissioner,57 T.C. 781, 802 (1972). We have determined that petitioner had no unreported income for 1978. For that year, there is thus no deficiency and no underpayment. See sec. 6653(c)(1). [10] *436 Since imposition of the addition to tax under section 6653(a) requires the existence of an underpayment, we conclude that petitioner is not liable for this addition to tax with respect to 1978. As regards 1977, 1979 and 1980, we have held, supra, that petitioner has failed to establish that he did not have unreported taxable income in the respective amounts of $13,806, $4,630.50 and $28,080.61. Since these amounts give rise to underpayments of tax for such years within the meaning of section 6653(c)(1), it was incumbent upon petitioner to show that such underpayments were not attributable to negligence or intentional disregard of rules and regulations. Petitioner has failed to introduce evidence and has thus failed to satisfy his burden of proof on this issue. Accordingly, we hold that petitioner is liable for the addition to tax under section 6653(a) with respect to 1977, 1979 and 1980. Since we have held that there is a deficiency and an addition to tax under section 6653(a) applicable with respect to 1977, we now consider the final issue of whether the assessment and collection of tax for that year are barred by the statute of limitations. [11]
In general, the assessment of tax must be made within three years after the filing of a return. Sec. 6501(a). However, a specific exception to this rule is set forth in section 6501(e)(1)(A). Under that provision, if the taxpayer omits from gross income an amount properly includible therein which is in excess *437 of 25 percent of the amount of gross income stated in the return, the applicable limitations period is six years from the filing of the return. See sec. 6501(e)(1)(A). The mailing of a statutory notice of deficiency and the filing of a petition in this Court have the effect of suspending the running of the statute of limitations until this Court's decision becomes final, and for an additional sixty days thereafter. See secs. 6503(a)(1), 6213(a). Thus, we must determine whether respondent's notice of deficiency was issued prior to the expiration of the limitations period. Petitioner filed his 1977 Federal income tax return on or about May 22, 1978, and respondent issued his notice of deficiency on September 14, 1983. Petitioner asserts that the assessment and collection of tax for 1977 are barred by section 6501(a) because the notice of deficiency was issued more than three years after the filing of petitioner's Federal income tax return for that year. Respondent acknowledges that, with regard to 1977, the notice of deficiency was not issued within the three year period specified in section 6501(a). He contends, however, that the assessment and collection of tax for 1977 are *438 permitted by reason of the six year limitations period set forth in section 6501(e)(1)(A). Respondent bears the burden of proving that the six year statute of limitations provided for in section 6501(e)(1)(A) is applicable. Thereunder, he must show (1) that petitioner omitted from gross income an amount in excess of 25 percent of the amount of gross income stated in the return and (2) that the omitted amount was properly includible in gross income. See Bardwell v. Commissioner,38 T.C. 84 (1962), affd. 318 F.2d 786 (10th Cir. 1963); Seltzer v. Commissioner,21 T.C. 398 (1953); Reis v. Commissioner,1 T.C. 9 (1942), affd. 142 F.2d 900 (6th Cir. 1944). Respondent may meet this burden of proof only by affirmative evidence; the presumption of correctness which generally attaches to respondent's deficiency determinations may not be relied upon in this regard. See Reis v. Commissioner,supra.
In his Federal income tax return for 1977, petitioner reported gross income of $28,416. [12] *440 Respondent determined that certain of petitioner's bank deposits during that year, amounting to $151,006, constituted unreported taxable income. We have held that, of this amount, $137,200 constituted non-taxable *439 gifts from Iran. Thus, we are left with the fact that petitioner had unexplained bank deposits for 1977 in the amount of $13,806.00. This amount is clearly more than 25 percent of $28,416, the amount of gross income stated in petitioner's 1977 return. However, respondent has failed to show, as he must to prevail on this issue, that the omitted amount was properly includible in gross income. The mere existence of bank deposits, although not explained or accounted for, does not of itself show that the sums were or were not income. Just as petitioner has failed to prove that the bank deposits in excess of the amounts transferred from Iran were not income, respondent has similarly failed to prove that the amounts in question were income. The mere showing on respondent's part that there was a failure to report as income items which, insofar as the evidence shows, might or might not have been income does not satisfy his burden of proving that petitioners omitted from gross income stated in their return an amount properly includible therein. Cf. Jones v. Commissioner,29 T.C. 601, 619 (1957). [13]
By reason of respondent's failure to bear his burden of proof, the statute of limitations issue for 1977 is decided for petitioner. To reflect concessions and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. On this return, petitioner also showed liability for Federal self-employment tax in the amount of $197.00.↩
3. The following table reflects an account-by-account summary of petitioner's total bank deposits during the years in issue: ↩
World Savings
Bank of America
Bank of America
Year
Account
Savings Account
Checking Account
Total
1977
$148,695.62
$32,800.00
$181,495.62
1978
18,412.89
89,980.00
15,050.00
123,442.89
1979
22,403.36
57,204.92
40,620.00
120,228.28
1980
2,343.80
125,602.08
173,774.00
301,719.88
4. While the record is not entirely clear, the parties are apparently in accord on this point. Respondent on brief states that "all of the transferred sums ended up in petitioner's bank accounts."↩
5. Petitioner has expressed concern that the safety of the transferor of the funds, currently residing in Iran, might be compromised by reason of involvement in the matters relating to this proceeding. Accordingly, upon petitioner's motion, the Court issued an order on July 31, 1985 whereby the entire trial record in this case was placed under seal. In keeping with the objectives of that order, we refer herein to the individual in question as "X". Similarly, we limit our discussion of facts relating to X and the transfers in issue to those necessary to our decision herein.
6. We note that petitioner has produced and the parties have stipulated to copies of bank documents which reflect petitioner's receipt of funds from Iran. As a general matter, however, such documents do not reflect the identity of the party sending the funds.↩
7. As noted, the taking of X's deposition was authorized by an order of the Court pursuant to Rule 81(a). Rule 81(i), which governs the use of depositions, provides as follows: At the trial or in any other proceeding in the case, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions: * * * (3) The deposition may be used for any purpose if the Court finds: * * * (B) that the witness is at such distance from the place of trial that it is not practicable for him to attend, unless it appears that the absence of the witness was procured by the party seeking to use the deposition; or * * * (E) that such exceptional circumstances exist, in regard to the absence of the witness at the trial, as to make it desirable in the interests of justice, to allow the deposition to be used. Counsel for respondent was present at the taking of X's deposition. Since X was in Iran at the time of the trial, and X's absence at trial was not procured by petitioner, we consider use of the deposition to establish that X sent funds to petitioner as gifts to be authorized under subparagraph (3)(B) of Rule 81(i). Cf. Foster v. Commissioner,80 T.C. 34, 132-133 (1983), affd. in part, vacated in part 756 F.2d 1430 (9th Cir. 1985). Alternatively, we think that, in this case, as provided in subparagraph (3)(E) of Rule 81(i), such exceptional circumstances exist with regard to X's absence at trial to make it desirable in the interests of justice to allow the deposition to be used for this purpose.
8. This figure reflects respondent's concession, referred to, supra,↩ that an additional $4,217.97 of petitioner's 1980 deposits is attributable to non-taxable sources. 9. The reason for this discrepency is not clear from the record, and the parties have not illuminated us with regard thereto. It would indicate that, for 1978, respondent determined that an amount less than the full amount of funds received from Iran constituted taxable income.
10. For purposes of the addition to tax under sec. 6653(a), where a return is timely filed, the term underpayment means a deficiency. See sec. 6653(c)(1). Petitioner's Federal income tax return for 1978 was timely filed. Since we have held that there is no deficiency for 1978, we similarly conclude there is no underpayment for that year within the meaning of section 6653(a)↩.
11. We need not consider this issue as it relates to 1978, since, as we have held, supra,↩ there is no deficiency and no addition to tax applicable with respect to that year. With respect to 1979 and 1980, the parties agree that the assessment and collection of tax are not barred by the statute of limitations.
12. This amount consists of wages in the amount of $3,900, interest in the amount of $2,136 and gross rental income in the amount of $22,380.
13. See also Macri Corporation v. Commissioner,T.C. Memo. 1976-273↩ and cases cited therein.